# FARRELL *v.* O'BRIEN.[1]

## APPEAL FROM AND CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

. No. 193. Argued April 4, 5, 1905.—Decided May 29, 1905.

Where the jurisdiction of the Circuit Court is invoked not only on the ground of diverse citizenship but also on a constitutional question, the mere averment of the latter is not sufficient if it is so wanting in merit as to be frivolous and, under such circumstances, if an appeal and a petition for certiorari are both pending, as in this case, the appeal will be dismissed; but if the correctness of the decree on the general issue should be considered the writ will be allowed and the record on appeal treated as a return thereto.

As the authority to make wills is derived from the State and the requirement of probate is but a regulation to make a will effective, matters of pure probate, in the strict sense of the words, are not within the jurisdiction of courts of the United States.

Where a state law, statutory or customary, gives to the citizens of the State, in an action or suit *inter partes*, the right to question at law the probate of a will or to assail probate in a suit in equity the courts of the United States in administering the rights of citizens of other States or aliens will enforce such remedies. The action or suit *inter partes*, however, must relate to independent controversies and not to mere controversies which may arise on an application to probate or a mere method of procedure ancillary to the original procedure.

The statutory procedure of the State of Washington for probate of wills relates to nuncupative wills as well as ordinary wills, and the authority conferred on the courts to contest a will is a part of the probate procedure, and does not cause a contest to be a suit *inter partes*, and therefore the Circuit Court of the United States, in a case where jurisdiction is based on diverse citizenship, is without jurisdiction to declare either the non-existence of a nuncupative will or the nullity of the probate thereof by the probate court.

Where the state statute provides that within a fixed period after its admission to probate interested parties may question the validity of a will or its probate, and the statute applies to written and nuncupative wills, the preliminary admission of a nuncupative will to probate and the temporary control taken of the property, both real and personal, by the probate court without the notice required by statute, do not so deprive the parties of their property without due process of law within the provisions of the Fourteenth Amendment as to afford a constitutional basis

---

[1].Originally docketed as *O'Callaghan* v. *O'Brien*.

for the jurisdiction of the Circuit Court of the United States in a suit where diverse citizenship exists to enjoin the enforcement of the decree of probate, and the decree of the Circuit Court of Appeals is final.

THIS suit was commenced in the Circuit Court of the United States for the District of Washington, Northern Division, by the filing on June 20, 1901, of a bill on behalf of Hannah O'Callaghan and Edward Corcoran, appellants in this court. The defendants were Terence O'Brien, as administrator of the estate of John Sullivan, and Marie Carrau. W. M. Russell and S. F. Coombs, who are joined as appellees, were the sureties on a bond given by Marie Carrau, on the appeal taken by her to the Circuit Court of Appeals.

It was averred that the complainants, aliens and residents of Ireland, were the first cousins and the sole heirs at law and next of kin of one John Sullivan, who died on September 26, 1900, in the city of Seattle, State of Washington, intestate, leaving a large amount of real and personal property. The appointment by the Superior Court of King County, State of Washington, of a special administrator and the subsequent appointment of the defendant O'Brien and his qualification as general administrator, were next averred. O'Brien and his co-defendant were alleged to be citizens of the State of Washington. The remaining averments were, in substance, that the defendant Marie Carrau, confederating with certain named relatives, had manufactured a pretended nuncupative will of John Sullivan, in favor of said Marie Carrau, under which will she was claiming to be the sole legatee and devisee of all his property. The will purported to have been made about 11 o'clock on the night previous to the death of Sullivan, in the presence of Marie Carrau and her relatives, and the testamentary words employed or the substance thereof were alleged to be the following:

"I want you to remember and witness that I will all my property and personal effects, worth many thousands of dollars, to be the money and property of your sister, Marie Carrau. I am sick, and we know not what might happen."

It was averred that on the application of the defendant Carrau, and after the appointment of O'Brien as general administrator, the alleged nuncupative will was admitted to probate, and at the time of the filing of the bill stood as illegally probated on the records of the Superior Court of King County, State of Washington. It was, however, charged that the said Superior Court, in assuming to probate said nuncupative will, acted wholly without jurisdiction in the premises, for the reason that the estate bequeathed exceeded the value of two hundred dollars, and because no legal citations had been issued out of said court, and ten days had not elapsed between the filing of the will and the hearing of the proof offered in support of the same. It was further averred that under the laws of the State of Washington real estate could not be disposed of by a nuncupative will.

Further averring that the state court, on the application of Marie Carrau, was about to make and enter a decree distributing to her the whole of the Sullivan estate upon the execution of a bond conditioned for the payment of her proportion of the indebtedness of the estate, to which decree the defendant O'Brien, administrator, it was averred, would yield obedience, and that said Marie Carrau on receiving possession would transfer the estate to others, and alleging that such an order and the action of the administrator thereunder would violate the due process clause of the Constitution of the United States, an injunction and the appointment of a receiver was prayed. It was also prayed that a decree might be made adjudging the alleged nuncupative will to be null and void, and perpetually restraining the defendant Carrau from setting up any title or claim thereunder, and adjudging and decreeing the complainants to be the only heirs at law of the decedent and entitled to receive his estate, and commanding the defendant administrator to surrender possession thereof to and account therefor to the complainants.

On behalf of O'Brien, administrator, there was filed what was termed a "stipulation and answer," signed by the complain-

ants and their solicitor and the administrator. In this paper the appointment of O'Brien was recited, and there was also embodied a disclaimer of any interest of said administrator in the subject matter of the controversy between complainants and the defendant Marie Carrau, or any knowledge in respect thereto other than as shown by the records. It was stipulated that no costs should be taxed against the administrator, and that complainants should not be put to proof of the allegations of the bill, so far as the same affected the administrator, and that the stipulation should be taken as and for an answer of said defendant administrator to the bill of complaint.

After other proceedings in the cause, not essential to be stated, an answer was filed on behalf of the defendant Carrau.

Briefly stated, the answer admitted the death of Sullivan, affirmed the validity of the alleged nuncupative will and of the probate thereof, and further averred that under the laws of Washington a nuncupative will, duly proved and probated, "devises both real and personal property to any amount in value." After specially answering each of the allegations in the bill, it was, in substance, averred, "by way of defense and as questioning the jurisdiction of the court," that the court in which the alleged will had been probated had the sole, original and exclusive jurisdiction of the probation of said will and the management of the estate of the decedent; that in said court various persons, including one Eugene Timothy Sullivan, a resident of the State of Washington, had filed their verified petitions, claiming each to be the sole heir of the decedent; that certain of said claimants (Sullivan not being one of the number), and also the complainants and the State of Washington, had commenced in the state court proceedings to contest the validity of the alleged will, and that such proceedings were at issue and were still pending.

Testimony was taken by commission and otherwise, under an agreement providing that the same might be read in evidence in any suit or proceeding which was then or might thereafter be pending in a state or Federal court affecting the estate

of John Sullivan. Both during the taking of the testimony and at the hearing which followed, the objection to the jurisdiction of the court was reiterated and exceptions were reserved.

A decree was entered in favor of complainants. 116 Fed. Rep. 934. In substance the decree found the complainants to be the next of kin of the decedent; that O'Brien was the duly qualified administrator; that the alleged nuncupative will was not made; that the Washington court acted wholly without jurisdiction in the probate of the alleged will, and hence the proceedings in respect thereto were void. It was decreed that the complainants, as first cousins of the deceased, were entitled to share equally in the assets of his estate, and the defendant O'Brien was directed to recognize their right. The defendant Carrau was perpetually restrained from setting up any claim to said estate, under the alleged will or otherwise.

On appeal the Circuit Court of Appeals reversed the decree of the Circuit Court for want of jurisdiction in that court over the subject matter and because of the absence of necessary parties, who, if made parties, would oust the court of jurisdiction, and the cause was remanded, with directions to dismiss the bill at the cost of complainants. 125 Fed. Rep. 657. The cause was appealed to this court. Following the filing of a motion to dismiss such appeal, an application was made on behalf of the complainants below for the allowance of a writ of certiorari, and the determination of these two motions was postponed to the hearing on the merits.

*Mr. James B. Howe,* with whom *Mr. Samuel H. Piles, Mr. George Donworth, Mr. Charles H. Farrell* and *Mr. Frederic D. McKenney* were on the brief, for the petitioners.

On the motion to dismiss. This court has jurisdiction and the appeal should not be dismissed. Jurisdiction below did not depend entirely on diverse citizenship. *Northern Pacific* v. *Soderberg,* 188 U. S. 526; *Ayers* v. *Polsdorfer,* 187 U. S. 585; *Howard* v. *United States,* 184 U. S. 676; *Huguley Mfg. Co.* v. *Galeton Cotton Mills,* 184 U. S. 290; *Loeb* v. *Columbia Town-*

*ship,* 179 U. S. 472; *Robinson* v. *Caldwell,* 165 U. S. 359; *Colorado Co.* v. *Turck,* 150 U. S. 138.

The bill also invoked the jurisdiction of the Circuit Court, because the case involved the construction and application of the Fourteenth Amendment to prevent complainants from being deprived of their property without due process of law, under authority of the State of Washington, by a judgment of the state court and proceedings thereon, all rendered and taken without jurisdiction and without notice to complainants.

As to effect of words "dependent" and "invoked" see *Florida Central* v. *Bell,* 176 U. S. 321; Cases *supra; Am. Sug. Ref. Co.* v. *New Orleans,* 181 U. S. 277; *Press Pub. Co.* v. *Monroe,* 164 U. S. 105, 112; *Spreckels* v. *McClain,* 192 U. S. 397.

The bill stated a case involving the application of the Constitution of the United States. See laws of Washington, 1895, p. 197, § 1; *Corcoran* v. *Bell,* 78 Pac. Rep. 945, and as to nuncupative wills see Laws, 1854, p. 315, § 23; Pierce's Code, §§ 2321, 2331; Ballinger's Code, § 6083; Code of 1881, § 1330; and as to service of process, Pierce's Code, §§ 335–337. Also as to jurisdiction of Superior Court of Washington, Const. Washington, Art. XXVII, § 10 and Art. IV, § 6.

The question presented by the bill was not simply whether the decree probating the will was valid or void, but, being void for want of jurisdiction in the court to render it, the attempt to take the property of the complainants by authority of the void decree and under authority of the state court, was a violation of their rights under the Fourteenth Amendment. See *Fayerweather* v. *Ritch,* 195 U. S. 276.

No judgment of a court is due process of law if rendered without jurisdiction in the court or without notice to the party. *Scott* v. *McNeal,* 154 U. S. 34; *C., B. & Q. R. R. Co.* v. *Chicago,* 166 U. S. 226, 234; *Earle* v. *McVeigh,* 91 U. S. 503, 510; *Winsor* v. *McVeigh,* 93 U. S. 274, 277; *Hovey* v. *Elliott,* 167 U. S. 409, 417; *Galpin* v. *Page,* 18 Wall. 350, 368; *Ex parte Wall,* 107 U. S. 289; Cooley's Const. Lim. 353; *Lavin* v. *Savings Bank,* 18 Blatchf. 1; *Roller* v. *Stolly,* 176 U. S. 398.

The essential elements of due process of law are notice and an opportunity to defend. *Simon* v. *Craft*, 182 U. S. 427.

The decree of probate was void. *Dolan* v. *Jones*, 79 Pac. Rep. 640; *Corcoran* v. *Bell*, 78 Pac. Rep. 945; *National Exchange Bank* v. *Wiley*, 195 U. S. 257; *Smith* v. *White*, 32 Washington, 414; *Ball* v. *Clothier*, 34 Washington, 299; *In re Leonard's Will*, 65 N. J. L. 167; *Randolph* v. *Bayne*, 44 California, 370; *Charleboise* v. *Bourdon*, 6 Montana, 373; *Ashurst* v. *Fountain*, 67 California, 18; *Spencer* v. *Houghton*, 68 California, 82; *Haws* v. *Clark*, 37 Iowa, 356; *Boales* v. *Shules*, 29 Iowa, 507; *Jones & Magee Co.* v. *Boggs*, 63 Iowa, 589; *Sprote* v. *Marshall*, 4 Iowa, 344; *Hodges* v. *Brett*, 4 Iowa, 345; *Melbourn* v. *Fouts*, 4 Iowa, 346; *Fernekes* v. *Case*, 75 Iowa, 152; *Joiner* v. *Delta Bank*, 71 Mississippi, 382; *Hunsaker* v. *Coffin*, 2 Oregon, 107; *Northcut* v. *Lemery*, 8 Oregon, 317, 323; *Lewis* v. *Bishop*, 19 Washington, 312; *Everett Water Co.* v. *Fleming*, 26 Washington, 364.

To allow judgment, rendered without jurisdiction for want of notice, to be used as a muniment of title to take the property of complainants from the possession of the administrator, who holds it in trust for them, is an act forbidden by the Fourteenth Amendment, and one which can be prevented by injunction before it is consummated, instead of being annulled after its execution. *Waterworks* v. *Vicksburg*, 185 U. S. 65; *Walla Walla* v. *Water Works*, 172 U. S. 1; *Pac. Elec. R. Co.* v. *Los Angeles*, 194 U. S. 112; *Pac. Gas. Imp. Co.* v. *Ellert*, 64 Fed. Rep. 421; *Nashville &c. Ry.* v. *Taylor*, 86 Fed. Rep. 168.

As to the jurisdiction of the Circuit Court where the amount involved is sufficient for jurisdictional purposes and the requisite diversity of citizenship exists, a Circuit Court of the United States has jurisdiction in equity to enjoin one from asserting and enforcing a decree of a state court obtained by fraud and rendered without jurisdiction, where there is no adequate remedy at law. *Howard* v. *Cordova*, 177 U. S. 609; *Cooper* v. *Newell*, 173 U. S. 155; *Huntington* v. *Laidley*, 176 U. S. 668; *Marshall* v. *Holmes*, 141 U. S. 590; *Arrowsmith* v. *Gleason*, 129 U. S. 86; *National Surety Co.* v. *State Bank*, 120

Fed. Rep. 593; *McNeil* v. *McNeil,* 78 Fed. Rep. 834; *Graver* v. *Faurot,* 76 Fed. Rep. 257.

While the probate of a will *ex parte* is a proceeding *in rem* over which a Circuit Court of the United States does not exercise jurisdiction, yet when a state court of general jurisdiction has jurisdiction by a proceeding *inter partes* to annul a will and its probate, a Circuit Court of the United States in such State has jurisdiction at law or in equity, as the nature of the case may require, to give the same relief, when the amount involved is sufficient and the requisite diversity of citizenship exists. *Richardson* v. *Green,* 159 U. S. 264; *S. C.,* 61 Fed. Rep. 432; *Crabbe* v. *Williams,* 187 U. S. 645; *Williams* v. *Crabbe,* 117 Fed. Rep. 193; *Wart* v. *Wart,* 117 Fed. Rep. 766; *Sawyer* v. *White,* 122 Fed. Rep. 223; *Kieley* v. *McGlynn* (Broderick's Will), 21 Wall. 503; *Ellis* v. *Davis,* 109 U. S. 485; *Gaines* v. *Fuentes,* 92 U. S. 10; *Byers* v. *McAuley,* 149 U. S. 608; *McDonald* v. *Jordan,* 178 U. S. 229; *Everhart* v. *Everhart,* 34 Fed. Rep. 82; *Broadhead* v. *Shoemaker,* 44 Fed. Rep. 518; *Kirby* v. *Railroad Co.,* 106 Fed. Rep. 551.

The statute of Washington having given an equitable right to the heirs of a decedent to contest the will in a Superior Court of the State, exercising general equity jurisdiction, by a proceeding *inter partes,* and the Supreme Court of the State having decided that the suit to enforce such right is of an equitable nature, the Circuit Court of the United States for the District of Washington has jurisdiction to enforce the same right in this suit. Cases *supra* and *Clayson* v. *Clayson,* 26 Washington, 253; *Stratton* v. *Tallman,* 25 Washington, 295; *Higgins* v. *Nethery,* 30 Washington, 239; *Bower* v. *Bower,* 5 Washington, 225; *Mason* v. *McLean,* 6 Washington, 31; *Hill* v. *Hill,* 7 Washington, 408; *Purdy* v. *Purdy,* 13 Washington, 164; *Boman* v. *Boman,* 49 Fed. Rep. 329; *Land Title Co.* v. *Asphalt Co.,* 127 Fed. Rep. 1; *U. S. Ship Building Co.* v. *Conklin,* 126 Fed. Rep. 132; *Jones* v. *Mutual Fidelity Co.,* 123 Fed. Rep. 506. *United States* v. *Jahn,* 155 U. S. 109.

As the question of jurisdiction lay at the threshold, and the

intent of the act of March 3, 1891, was that that question should be determined by this court, the Circuit Court of Appeals should properly have suspended any consideration of the case upon the merits until that question could be determined upon certificate.

*Mr. William F. Hays, Mr. J. P. Houser, Mr. Joseph W. Robinson* and *Mr. John H. Mitchell* for respondents submitted:

Jurisdiction was not invoked upon Federal grounds. If diversity of citizenship is eliminated nothing is left. This appeal should be dismissed. *Rouse* v. *Letcher,* 156 U. S. 47; *Huguley Mfg. Co.* v. *Galeton Cotton Mills,* 184 U. S. 290; *Loeb* v. *Columbia County,* 179 U. S. 472; *Am. Sugar Co.* v. *New Orleans,* 181 U. S. 277; *Howard* v. *United States,* 184 U. S. 676; *Northern Pacific* v. *Soderberg,* 188 U. S. 526; *Robinson* v. *Caldwell,* 165 U. S. 359; *Florida Central* v. *Bell,* 176 U. S. 321.

The decree of the United States Circuit Court of Appeals was final and cannot be reviewed in this court. Section 6, act of March 3, 1901, 1 Supp. Rev. Stat. 903; Rule 8 of this Court; *Carrau* v. *O'Callaghan,* 125 Fed. Rep. 657; *United States* v. *Taylor,* 147 U. S. 695; *Ayres* v. *Polsdorfer,* 187 U. S. 589.

As to the jurisdiction of the Circuit Court the conclusion reached by the Circuit Court of Appeals was based upon the constitution and statutes of Washington. Section 6, Art. IV, Const. Washington.

Sections 851–867, Hill's Ann. Code, contain express provisions for a contest of any will admitted to probate for any cause affecting the validity of the will, but that this must be done by petition to the Superior Court, having jurisdiction and administering such estate. *Stratton* v. *Tallman,* 25 Washington, 295; *S. C.,* 29 Washington, 317; *Re Alfsted's Estate,* 27 Washington, 175; *Filley* v. *Murphy,* 30 Washington, 1, 5. And see §§ 6110, 6347–6377, 2 Ballinger's Code, authorizing the trial and determination in the probate department of the state court, of all questions of heirship, as well as the right to take under wills.

Such a contest necessarily requires that court to determine the question of kinship as an issue incident to the right to contest the will, and the state court in construing these statutes has uniformly held this to be the law. The probate department has the sole and exclusive jurisdiction so to do. Cases *supra* and *Webster* v. *Seattle Trust Co.*, 7 Washington, 651; *Griffin* v. *Warburton*, 23 Washington, 231; *Browder* v. *Finney*, 30 Washington, 74; *In re Murphy's Estate*, 30 Washington, 9; *Church* v. *McMillan*, 31 Washington, 643.

The Federal courts have never assumed to exercise jurisdiction over probate matters, except owing to some peculiar statute in the one class of cases, or a clear misapprehension of what has been decided in certain other cases. *Bedford Quarries Co.* v. *Thomlinson*, 95 Fed. Rep. 208; *Walker* v. *Brown*, 63 Fed. Rep. 204; *Wahl* v. *Brown*, 63 Fed. Rep. 680; *In re Cilley*, 58 Fed. Rep. 977; *Ellis* v. *Davis*, 109 U. S. 485; *Simmons* v. *Saul*, 138 U. S. 430; *Broderick's Will*, 21 Wall. 503; *Reed* v. *Reed*, 31 Fed. Rep. 53; *In re Aspinwall's Estate*, 83 Fed. Rep. 952; *Oakley* v. *Oakley*, 64 Fed. Rep. 246; *Blythe* v. *Hinckley*, 84 Fed. Rep. 250. And see *Wahl* v. *Franz*, 100 Fed. Rep. 680.

Under the laws of the State of Washington, a will may be probated *ex parte*, and when so probated, it amounts to nothing more nor less than the institution of a special proceeding, which does not become final for one year, during which time any person interested may file a petition in contest and litigate every question going to the validity of the will, its execution or the probate thereof.

Even if the Federal and the state courts have concurrent jurisdiction whichever court first assumes jurisdiction will proceed to a final determination without any interference from any other court. *In re Joseph's Estate*, 50 Pac. Rep. 786.

A petition to probate a will is the beginning of a special proceeding. The order admitting to probate is not final so long as proceedings may be taken to revoke the probate. In all subsequent stages the contest is but a part of the proceeding to probate the will and is not a new and distinct proceed-

ing. *Higgins* v. *Nethery*, 30 Washington, 239; *Estate of Abbie H. H. Stuart*, 34 Washington, 362; *Zimmerman* v. *So. Relle*, 80 Fed. Rep. 417; *Hughes* v. *Green*, 84 Fed. Rep. 833; *Nugent* v. *Phila. Traction Co.*, 87 Fed. Rep. 251; *Marks* v. *Marks*, 75 Fed. Rep. 322; *Taylor* v. *Taintor*, 16 Wall. 370; *Gamble* v. *San Diego*, 79 Fed. Rep. 500.

When the statute requires notice of the proceeding to probate or contest a will, the judgment of the court cannot be collaterally attacked for want of notice if the party not notified may still contest the will by appeal and trial *de novo* or by a statutory action, suit or other proceeding. 16 Enc. Pl. & Pr. 1004; *Hall* v. *Hall*, 47 Alabama, 290; *Herring* v. *Ricketts*, 101 Alabama, 340; *Dickey* v. *Vann*, 81 Alabama, 425; *Wetmore* v. *Parker*, 52 N. Y. 450. All questions to be determined in this action are now or have been pending in the state court of Washington, and were so pending, before the Federal court assumed jurisdiction and so far the state courts, in the exercise of the powers and duties lodged with them, have held that the probate court *In re Estate of John Sullivan*, deceased, acquired jurisdiction to probate the nuncupative will and that the decree probating the same found all the jurisdictional facts required by the statute.

It is conceded that the probate court, administering this estate, must distribute the estate and in making a decree of distribution, it must necessarily determine who the heirs and legatees of this estate are, if any there be. So far, the state courts have held the will valid and the nuncupative statute constitutional. The Federal court will not now hold that the probate court had no jurisdiction and annul the decree entered therein to maintain its jurisdiction.

MR. JUSTICE WHITE, after making the foregoing statement, delivered the opinion of the court.

The motion to dismiss the appeal and the application for the allowance of a writ of certiorari will first be passed upon.

While the alienage of complainants and the citizenship of respondents was alleged, the jurisdiction of the Circuit Court was not invoked solely upon that ground. It was asserted in the bill that the requirements of the Code of Washington had not been complied with in respect to the preliminary issue of citations to the next of kin of the decedent; that the hearing on the application to probate the alleged nuncupative will was had before service of citations in the mode prescribed by law, and as at the time of the filing of the bill six months had elapsed without lawful probate of the will, the title of complainants to the property as heirs and next of kin of the intestate had become absolute. The use by the defendant Carrau of the decree of probate as a muniment of title with which to obtain from the administrator under the authority of the state court the property of complainants in the custody of the administrator was, as a consequence, asserted to amount to a deprivation of property without due process of law, in violation of the Constitution of the United States.

The statute which it was asserted limited the authority of the Washington court to probate the nuncupative will in question, to a lawful probate thereof within six months of the speaking of the testamentary words, is as follows:

"No proof shall be received of any nuncupative will unless offered within six months after speaking the testamentary words, nor unless the words or the substance thereof be first committed to writing and a citation issued to the widow or next of kin of the deceased, that they may contest the will if they think proper." Pierce's Code, 2352.

It is settled that the mere averment of a constitutional question is not sufficient, where the question sought to be presented is so wanting in merit as to cause it to be frivolous or without any support whatever in reason. *Fayerweather* v. *Ritch*, 195 U. S. 276, 299. We think that the alleged violations of Federal right based upon the Fourteenth Amendment were so unsubstantial and devoid of merit that they furnish no real support to the contention that the decree of the Circuit Court of Ap-

peals was not final. From this it follows that the motion to dismiss must prevail. But we are not thereby relieved of the duty of considering the correctness of the decree of the Circuit Court of Appeals, because in our opinion the case is one in which the writ of certiorari should be allowed. We therefore dismiss the appeal and grant the application for certiorari, treating the record filed on the appeal as a return to that writ. Before coming, however, to dispose of the case, we observe that we do not at this moment state the reasons by which we are led to the conclusion that the rights asserted under the Constitution of the United States were so wholly wanting in merit as not to afford a basis for the appeal, because those reasons will be made manifest when we come to consider the question whether the bill was one within the jurisdiction of the Circuit Court.

The issue first for decision is, Did the Circuit Court of Appeals rightly hold that the Circuit Court was without jurisdiction of the case made by the bill?

The solution of the question is not free from complexity. Original reasoning is not, however, required, since the subject has been previously considered by this court. We come, therefore, to an analysis of the leading cases. It results from the analysis which we have made of the bill that by necessary effect it assailed the previous probate and the existence of the will, and, besides, under the hypothesis that a will and probate might be found to exist, sought to limit the operation and effect of the will. The subject, therefore, has a twofold aspect, the power of Federal courts to entertain jurisdiction concerning the probate or the revocation of the probate of wills, where the requisite diversity of citizenship exists, and the power of those courts, where such diversity obtains, to adjudicate concerning rights against the estates of decedents. Whilst we shall consider these two subjects separately, to avoid repetition we shall first consecutively analyze the cases concerning both subjects.

In *Hook* v. *Payne*, 14 Wall. 252, certain distributees of an estate over which an administrator had been appointed in a court of Missouri, alleging diversity of citizenship, filed their

separate bills in a Circuit Court of the United States, for the purpose of annulling releases which they had given as to their distributive shares to the administrator, on the ground of his fraud, and also sought to annul settlements alleged to have been fraudulently made in the Probate Court, and to have a decree against the administrator for the amount of their distributive shares. The several suits were consolidated. The trial court, by an interlocutory decree, set aside the releases and the settlements made by Hook (the administrator) with the county court, and appointed a master to state an account with Hook as administrator. Moreover, the master was directed to inquire what other persons were interested in the estate, and to report what payments, if any, had been made to them, and what was due to them respectively at the date of the report. The report of the master not only accorded the relief claimed by the complainants, but restated the accounts of the administrator, and in effect reported a scheme of distribution of the estate. The report was approved by the trial court. In this court the decree, in so far as it concerned the rights of the complainants, was affirmed. In so far as it attempted to distribute the estate and to deal generally with the rights of persons, other than the complainants, the decree was reversed, the court saying (p. 255):

"We are of opinion that all that part of the decree which attempts to settle the rights of the parties, who were neither plaintiffs nor defendants in the original suit, must be reversed.

"We do not propose, in this case, to lay down any precise rule on the subject of adjusting administrator's accounts in the Federal courts, or how far certain persons, not made parties to the original suit, or incapable of being made parties by reason of their citizenship, may or may not come in before the master, on a general accounting, and protect their rights; nor do we intend to go into that question."

In *Broderick's Will*, 21 Wall. 503, the case was this: A suit in equity was brought in the Circuit Court for the District of California by the alleged heirs at law of Broderick to set aside the

probate of his will, to have the same declared a forgery, and to recover the assets of Broderick's estate, much of which consisted of real property. The defendants were the executors, and several hundred persons who were in possession of portions of the real estate, claiming ownership thereof as purchasers at sales made by the executors. The estate had been administered upon and distribution had been fully made before the institution of the suit. The first contention which the court disposed of was that a court of equity had no jurisdiction of the subject matter of the suit, the same being vested exclusively in the probate court of the city and county of San Francisco. In sustaining this objection the court, through Mr. Justice Bradley, said (p. 509):

"As to the first point, it is undoubtedly the general rule, established both in England and this country, that a court of equity will not entertain jurisdiction of a bill to set aside a will or the probate thereof. The case of *Kerrick* v. *Bransby*, decided by the House of Lords in 1727, is considered as having definitely settled the question. Whatever may have been the original ground of this rule (perhaps something in the peculiar constitution of the English courts) the most satisfactory ground for its continued prevalence is, that the constitution of a succession to a deceased person's estate partakes, in some degree, of the nature of a proceeding *in rem*, in which all persons in the world who have any interest are deemed parties, and are concluded as upon *res judicata* by the decision of the court having jurisdiction. The public interest requires that the estates of deceased persons, being deprived of a master, and subject to all manner of claims, should at once devolve to a new and competent ownership; and, consequently, that there should be some convenient jurisdiction and mode of proceeding by which this devolution may be effected with least chance of injustice and fraud; and that the result attained should be firm and perpetual. The courts invested with this jurisdiction should have ample powers both of process and investigation, and sufficient opportunity should be given to check and revise proceed-

ings tainted with mistake, fraud, or illegality. These objects are generally accomplished by the constitution and powers which are given to the Probate Courts, and the modes provided for reviewing their proceedings. And one of the principal reasons assigned by the equity courts for not entertaining bills on questions of probate is, that the Probate Courts themselves have all the powers and machinery necessary to give full and adequate relief.

"In England after the acts of Parliament had authorized devises of real estate, the same position was assumed by courts of equity in regard to such devises; it being held that any fraud, illegality, or mistake affecting their validity could be fully investigated and redressed in the courts of common law, where only devises were cognizable."

After a full review of authorities, holding that a court of equity did not possess power to annul the probate of a will, and in concluding its opinion, referring to a statute of the State of California, the court observed (p. 519):

"The statute of 1862 has been referred to, which gives to the District Courts of California power to set aside a will obtained by fraud or undue influence, or a forged will, and any probate obtained by fraud, concealment, or perjury. Whilst it is true that alterations in the jurisdiction of the state courts cannot affect the equitable jurisdiction of the Circuit Courts of the United States, so long as the equitable rights themselves remain, yet an enlargement of equitable rights may be administered by the Circuit Courts, as well as by the courts of the State. And this is probably a case in which an enlargement of equitable rights is effected, although presented in the form of a remedial proceeding. Indeed, much of equitable jurisdiction consists of better and more effective remedies for attaining the rights of parties. But the statute referred to cannot affect this suit, inasmuch as the statute of limitations would still apply in full force, and would present a perfect bar to the suit."

In *Gaines* v. *Fuentes*, 92 U. S. 10, the facts were these: A will of Daniel Clark had been probated in the Second District

Court for the Parish of Orleans, State of Louisiana. Distribution of the estate had been completed, when certain parties brought an action in the court named to annul the alleged will and to recall the decree by which it was probated. The alleged daughter of Daniel Clark was made a party defendant, and it was averred that suits had been brought by her against the plaintiffs, in a Circuit Court of the United States, as heir at law of her father, to recover certain property alleged to belong to his estate, and that the existence of the decree of probate was an obstacle to the proper defense of those suits, and made it necessary to sue to annul the will and avoid the decree of probate. Application was made to remove the cause to the Circuit Court of the United States, which the state court refused, on the ground that the suit involved merely a probate matter, and was therefore not cognizable in the Federal court. From a final decree of the state court in favor of the plaintiffs the cause was brought to this court. It was decided that the state court erred in refusing to permit the removal. In the opening passage of the opinion the court pointed out that, whilst the suit was, in form, one to annul the alleged will of Daniel Clark and to recall the decree by which it was probated, it was in reality a suit brought against the devisee, and by strangers to the estate, to annul the will as a muniment of title, and to restrain the enforcement of the decree by which its validity had been established so far as it affected their property. The court observed:

"It is, in fact, an action between parties; and the question for determination is, whether the Federal court can take jurisdiction of an action brought for the object mentioned between citizens of different States, upon its removal from a state court."

The decision in the case of *Broderick's Will*, concerning the want of power in a court of equity to probate a will or revoke its probate, was expressly approved. But, referring doubtless to the concluding passage in the opinion in that case, it was observed that if such equitable power was vested in the state courts the Federal courts sitting in the States where such stat-

utes existed might exercise concurrent jurisdiction in a case between proper parties. Considering the want of authority of Federal courts, as such, over the probate of wills, it was declared (p. 21):

"There are, it is true, in several decisions of this court, expressions of opinion that the Federal courts have no probate jurisdiction, referring particularly to the establishment of wills; and such is undoubtedly the case under the existing legislation of Congress. The reason lies in the nature of the proceeding to probate a will as one *in rem*, which does not necessarily involve any controversy between parties: indeed, in the majority of instances, no such controversy exists. In its initiation all persons are cited to appear, whether of the State where the will is offered, or of other States. From its nature, and from the want of parties, or the fact that all the world are parties, the proceeding is not within the designation of cases at law or in equity between parties of different States, of which the Federal courts have concurrent jurisdiction with the state courts under the judiciary act; but whenever a controversy in a suit between such parties arises respecting the validity or construction of a will, or the enforcement of a decree admitting it to probate, there is no more reason why the Federal courts should not take jurisdiction of the case than there is that they should not take jurisdiction of any other controversy between the parties."

Having decided that the suit was in all essential particulars one *inter partes*, for equitable relief to cancel an instrument alleged to be void and to restrain the enforcement of a decree alleged to have been obtained by false and insufficient testimony, the court was brought to consider whether the law of Louisiana allowed such equitable relief, and said (p. 20):

"There are no separate equity courts in Louisiana, and suits for special relief of the nature here sought are not there designated suits of equity. But they are none the less essentially such suits; and if by the law obtaining in the State, customary or statutory, they can be maintained in a state court, whatever designation that court may bear, we think they may be main-

tained by original process in a Federal court, where the parties are, on the one side, citizens of Louisiana, and, on the other, citizens of other States."

In *Ellis* v. *Davis*, 109 U. S. 485, the will of Mrs. Dorsey had been duly proved in a Probate Court of Louisiana, and the universal legatee named therein had been recognized and put in possession of the estate under the will. Some time after a bill was filed in the Circuit Court of the United States against him for the two-fold purpose of setting aside the probate and annulling the will, on the ground that it had been made under undue influence, and for similar reasons, the annullment was prayed of a conveyance which had been made by the deceased to the universal legatee. An account of the rents and profits, etc., was also prayed. A demurrer to the bill was sustained and the case came to this court. It was decided that the court below had rightly sustained the demurrer. In the course of the opinion the court declared (p. 497):

"The original probate (of wills), of course, is mere matter of state regulation, and depends entirely upon the local law; for it is that law which confers the power of making wills, and prescribes the conditions upon which alone they may take effect; and as, by the law in almost all the States, no instrument can be effective as a will until proved, no rights in relation to it, capable of being contested between parties, can arise until preliminary probate has been first made. Jurisdiction as to wills, and their probate as such, is neither included in nor excepted out of the grant of judicial power to the courts of the United States. So far as it is *ex parte* and merely administrative, it is not conferred, and it cannot be exercised by them at all until, in a case at law or in equity, its exercise becomes necessary to settle a controversy over which a court of the United States may take cognizance by reason of the citizenship of the parties."

The court expressly reaffirmed the want of power in a Federal court of equity to set aside the probate of a will in the absence of a state statute giving the right in the courts of the State to such equitable relief, it being reiterated (p. 494):

"It is well settled that no such jurisdiction belongs to the Circuit Courts of the United States as courts of equity; for courts of equity as such, by virtue of their general authority to enforce equitable rights and remedies, do not administer relief in such cases. The question in this aspect was thoroughly considered and finally settled by the decision of this court in the case of *Broderick's Will*, 21 Wall. 503."

Coming to consider whether, by the customary or statute law of Louisiana, there existed power in the courts of that State, as a matter of equitable cognizance, to entertain a suit to annul a will and set aside its probate, it was decided that no such right existed, but that, on the contrary, the Louisiana law, whilst denying such right, afforded relief in an action at law, where the recovery of property was sought, by permitting the validity of a will and its probate, when asserted as a muniment of title, to be collaterally questioned. The court said (p. 499):

"It remains, therefore, in the present case to inquire whether the complainants are entitled, under the laws of Louisiana, to draw in question, in this mode and with a view to the decree sought, the validity of the will of Sarah Ann Dorsey and the integrity of its probate.

"An examination of the decisions of the Supreme Court of Louisiana on the subject will disclose that a distinction is made in reference to proceedings to annul a will and its probate, according to the objects to be accomplished by the judgment and the relation of the parties to the subject. If the administration of the succession is incomplete and *in fieri*, and the object is to alter or affect its course, the application must be made to the court of probates, which, in that case, has possession of the subject and exclusive jurisdiction over it. If, on the other hand, the succession has been closed, or has proceeded so far that the parties entitled under the will have been put in possession of their rights to the estate, then the resort of adverse claimants must be to an action of revendication in the courts of general jurisdiction, in which the legal title is asserted as against the will claimed to be invalid, making an issue involving that question."

Following this statement the court made an exhaustive review of the decided cases in the State of Louisiana, establishing the proposition just previously quoted; and, as a necessary result of this conclusion, the court declared that in *Gaines* v. *Fuentes* it had been merely assumed that relief in the nature of an equitable remedy was allowed by the law of Louisiana, under which the probate of a will could be set aside, saying (pp. 499, 503):

"It was assumed [in that case], and not decided, that the said suit brought in the state court was one which, under the laws of the State, its courts were authorized to entertain for the purpose of granting the relief prayed for. The point decided was, that if it were it might properly be transferred to a court of the United States."

\*  \*  \*  \*  \*  \*  \*  \*

"The case of *Gaines* v. *Fuentes*, 92 U. S. 10, was such an action of nullity, but, as before remarked, the point decided in that case was not that it would lie, according to the law of Louisiana, but that if it would lie in the state court it was removable to the Circuit Court of the United States, because it presented a controversy wholly between citizens of different States."

In *Byers* v. *McAuley*, 149 U. S. 608, it was decided that a Federal court cannot exercise original jurisdiction in respect to the administration of the estate of a decedent, and that it cannot, by entertaining jurisdiction of a suit against the administrator draw to itself the full possession of the estate, or the power of determining all claims against or to it. It was, however, decided that where the estate of a deceased person is ready for distribution, but no adjudication has been made as to the distributees, the Circuit Court can entertain jurisdiction in favor of citizens of other States to determine and award their shares in the estate. It is true that the bill filed in the case assailed the validity of the probate of a document which disposed, in favor of two corporations, of a house and lot in the city of Pittsburg. But the trial court gave effect to the document as

a declaration of trust, and the controversy on that branch of the case was not pressed on the appeal.

Let us, then, first deduce the principles established by the foregoing authorities as to the power of a court of the United States over the probate or revocation of the probate of a will. An analysis of the cases, in our opinion, clearly establishes the following:

First. That, as the authority to make wills is derived from the State and the requirement of probate is but a regulation to make a will effective, matters of pure probate, in the strict sense of the words, are not within the jurisdiction of courts of the United States.

Second. That where a state law, statutory or customary, gives to the citizens of the State, in an action or suit *inter partes*, the right to question at law the probate of a will or to assail probate in a suit in equity the courts of the United States in administering the rights of citizens of other States or aliens will enforce such remedies.

The only dispute possible under these propositions may arise from a difference of opinion as to the true significance of the expression "action or suit *inter partes*," as employed in the second proposition. When that question is cleared up the propositions are so conclusively settled by the cases referred to that they are indisputable. Before coming to apply the propositions we must, therefore, accurately fix the meaning of the words action or suit *inter partes*.

The cited authorities establish that the words referred to must relate only to independent controversies *inter partes*, and not to mere controversies which may arise on an application to probate a will because the state law provides for notice, or to disputes concerning the setting aside of a probate, when the remedy to set aside afforded by the state law is a mere continuation of the probate proceeding, that is to say, merely a method of procedure ancillary to the original probate, allowed by the state law for the purpose of giving to the probate its ultimate and final effect. We say the words action or suit

*inter partes* must have this significance, because unless that be their import it would follow that a State may not allow any question to be raised concerning the right to probate at the time of the application, or any such question thereafter to be made in an ancillary probate proceeding without depriving itself of its concededly exclusive authority over the probate of wills. This may be readily illustrated. Thus, if a state law provides for any form of notice on an application to probate a will and authorizes a contest before the admission of the writing to probate, then it would follow, if the words suit or action of *inter partes* embrace such a contest, the proof of wills, if contested by a citizen of another State or alien, would be cognizable in the courts of the United States and hence not under the exclusive control of the state probate court. Again, if a State authorized a will to be proved in common form, that is, without notice, and allowed a supplementary probate proceeding by which the probate in common form could be contested, then, again, if such a contest be a suit *inter partes* it would also be of Federal cognizance.

Having fixed the meaning of the words action or suit *inter partes* we come to apply the propositions deduced from the decided cases, in order to test the question of the jurisdiction of the Circuit Court over the relief prayed for in the bill, so far as relates to the annulment of the probate. This requires us to determine, whether by custom or by the statute law of the State of Washington, the courts of that State had the power of administering the relief prayed for on that subject in the bill by an independent suit as distinguished from the exercise of probate jurisdiction originally or merely ancillary. There is no pretense of any custom in the State of Washington beyond the scope of the authority conferred upon the courts of the State by the laws thereof. The question, therefore, reduces itself to a narrow compass, that is, what remedies do the laws of Washington create for the purpose of the probate of wills and the revocation of a probate, and are those remedies exclusively probate in their character or necessarily merely

ancillary thereto, or do they confer upon the state courts general legal or equitable authority on the subject merely because of the existence of a controversy? That is to say, is a will contest under the laws of Washington an ordinary action or suit between parties or a special probate proceeding directly ancillary to or concerning the probate of the will?

By section 5 of article IV of the constitution of Washington it was provided that there should be in each of the organized counties of the State a superior court, and by section 6 of the same article original jurisdiction was conferred upon such court in equity cases and cases at law, and over specified crimes, etc., and it was vested with original jurisdiction "of all matters of probate." By such statute such courts, in the exercise of their jurisdiction over matters of probate, were authorized:

"1. To take proof of wills, and to grant letters testamentary and of administration. . . .

"2. To settle the estates of deceased persons, and the accounts of executors, administrators, and guardians.

"3. To allow or reject claims against the estates of the deceased persons as hereinafter provided.

.* * * * * * * *

"5. To award process, and cause to come before them all persons whom they may deem it necessary to examine, whether parties or witnesses or, who, as executors, administrators, or guardians, or otherwise, shall be intrusted with or in any way accountable for any property belonging to any minor, orphan, or person of unsound mind, or estate of any deceased person.

"6. To order and cause to be issued all writs which may be necessary to the exercise of their jurisdiction." Ballinger's Annotated Codes and Statutes of Washington, sec. 6075.

Applications for the probate of a will or for letters testamentary are required to be made to the judge of the Superior Court having jurisdiction, and he is authorized, in the case of ordinary wills, on the exhibition of the will, to receive the proof

and grant a certificate of probate, or if such will be rejected to issue a certificate of rejection. Ballinger, §§ 681, 862, 6100. Testimony given in support of a will is to be reduced to writing, signed by the witnesses, and certified by the judge of the court, and wills admitted to probate are required to be recorded. Ballinger, §§ 6105, 6106.

After defining a nuncupative will, the statutes of Washington provide as follows:

"No proof shall be received of any nuncupative will, unless it be offered within six months after speaking the testamentary words, nor unless the words, or the substance thereof, be first committed to writing, and a citation issued to the widow or next of kin of the deceased, that they may contest the will if they think proper." Ballinger, § 4606.

Proceedings to contest a will after admission to probate or to secure probate after a certificate of rejection are regulated by the following sections of the code:

"If any person interested in any will shall appear within one year after the probate or rejection thereof, and, by petition to the superior court having jurisdiction, contests the validity of said will, or prays to have the will proven which has been rejected, he shall file a petition containing his objections and exceptions to said will, or the rejection thereof. Issues shall be made up, tried and determined in said court respecting the competency of the deceased to make last will and testament, or respecting the execution by the deceased of such last will and testament under restraint or undue influence or fraudulent representation, or for any other cause affecting the validity of such will." Ballinger, § 6110.

"Upon the filing of the petition referred to in the next preceding section, a citation shall be issued to the executors who have taken upon them the execution of the will, or to the administrators with the will annexed, and to all legatees named in the will residing in the State, or to their guardians if any of them are minors, or their personal representatives if any of them are dead, requiring them to appear before the court on

a day therein specified, to show cause why the petition should not be granted." Ballinger, § 6111.

"If no person shall appear within the time aforesaid, the probate or rejection or such will shall be binding, save [as] to infants, married women, persons absent from the United States, or of unsound mind, a period of one year after their respective disabilities are removed." Ballinger, § 6112.)

"If, upon the trial of said issue, it shall be decided that the will is for any reason invalid, or that it is not sufficiently proved to have been the last will of the testator, the will and probate thereof shall be annulled and revoked." Ballinger, § 6114.

These statutory provisions have been decided by the Supreme Court of Washington to apply as well to a contest of a nuncupative will as to one of an ordinary will. *State ex rel. Stratton, Attorney General,* v. *Tallman, Judge,* 25 Wash. 295; 29 Wash. 317.

We are of the opinion that the sections in question authorize a proceeding for contest only before the court which has admitted the will to probate or rejected the application made for probate, and that the authority thus conferred concerning the contest is an essential part of the probate procedure created by the laws of Washington, and does not, therefore, cause a contest, when filed, to become an ordinary suit between parties. This is plainly indicated by the fact that the proceeding provided by the statute concerns not only revocation of the probate of a will, but also the right to petition for the probate of a will where an application to probate it had been previously rejected. The context of the legislation in question also clearly establishes that the authorized proceeding is but supplementary to, and a continuation of, the original proceeding in probate. This is indicated both by the form of the petition which is required to be filed and the character of the proof which may be considered on that petition. That the statute does not contemplate a formal suit, but a mere summary and ancillary proceeding, is shown by the circumstance that the petitioner is merely required to state in his petition "his objections and

exceptions to said will, or to the rejection thereof," and on the statement of these objections in the petition, without the formality of the technical pleadings customary in ordinary suits *inter partes,* the statute requires that specified issues be then made up for hearing. And, further, the terms of section 876 treat the contest as not an ordinary suit between parties, since it is made the duty of the court to revoke the probate if for any reason the will is invalid, or if " *it is not sufficiently proved* to have been the last will of the testator." Moreover, it is evident that the statute contemplates that the court, when acting on a contest filed under its provisions, is not confined to the exertion of powers which would properly be exerted in an ordinary suit *inter partes,* since the statute causes a decree in favor of the petitioner, revoking a will already admitted to probate, to inure not only to the benefit of the particular contestant, but to be operative as to the whole world. This follows from the provision of the statute saying that if the court finds in favor of the petitioner who sought the revocation of a probate "the will and the probate thereof shall be annulled and revoked."

It is insisted in argument that the Supreme Court of Washington has referred to a will contest under the statutes of that State as a suit or action, and from this the inference is deduced that the proceeding is one *inter partes,* in the broad sense of the term, and not a part of the probate proceedings. But we do not consider that the cases relied on do more than use the term suit or action as a convenient form of expression. The view taken by the Supreme Court of Washington as to the substantive nature of a will contest is illustrated by its opinion in *Hunt* v. *Phillips,* 34 Washington, 362, where the court, in opening its opinion, referred to the case before it as "a proceeding in contest of the will," etc.

But the opinion of the Supreme Court of Washington as to the nature of a will contest under the statute of Washington does not depend upon the mere inference deducible from the characterization which the court has given to that proceeding. In *Montrose* v. *Byrne,* 24 Washington, 288, it was expressly held

that the statutory proceeding to establish a will was special in its character, so much so that in a contest concerning the same the parties were necessarily limited to the question of the execution or validity of the will and the right to admit the same to probate, and therefore issues concerning the construction of the will or the vesting of property thereunder could not be considered in a contest proceeding.

It follows that as the Circuit Court of the United States had no jurisdiction to admit a will to probate, or to entertain a pure probate proceeding, and as the remedy afforded by the laws of Washington to secure the probate or the revocation of the probate of a will were proceedings of a purely probate character, and not an action or suit *inter partes*, the Circuit Court of Appeals correctly decided that the Circuit Court, although there was diversity of citizenship, was without jurisdiction of the cause so far as the bill sought a declaration of the non-existence of a will and the consequent nullity of the probate.

It remains only to consider the bill under its other aspects. The contention that the state court in admitting the nuncupative will to probate violated the due process clause of the Fourteenth Amendment to the Constitution of the United States rests upon two propositions: (*a*) The law of the State, it is contended, required that proof of an alleged nuncupative will should be offered within six months after the speaking of the testamentary words, and that notice should issue to the next of kin as a prerequisite to the power to entertain the application for probate. As here it is said the proof established that the hearing as to probate was had without the notice required by the statute, therefore the admission to probate was a violation of the due process clause of the Fourteenth Amendment to the Constitution of the United States. (*b*) As under the laws of Washington it is asserted real estate could not be devised by a nuncupative will, therefore, the contention is, the Probate Court had no jurisdiction over such real estate or the rents, issues and profits thereof, and hence an attempt by that court to exert authority over that character of property

amounted to depriving the heirs at law of such property without due process of law, in violation of the Fourteenth Amendment.

We are of opinion that the proposition, resting upon the want of notice, did not furnish a basis for the jurisdiction of the Circuit Court. The contention rests upon the assumption that the failure to give the notice under the state law was so essentially a prerequisite to a hearing on the question of probate that a probate made without the notice was null and void, and could collaterally be so treated. In *State ex rel. Stratton, Attorney General,* v. *Tallman, Judge of the Superior Court,* 25 Washington, 295, the contrary doctrine was expressly held. That case concerned a collateral controversy relating to the very estate here in question. The Attorney General had filed in the Probate Court a motion praying for the vacation of the order admitting the will to probate, and to set aside all the proceedings leading up to the probate of the will, upon the grounds that the court acquired no jurisdiction to hear any evidence in support of the will, because no citation was issued as required by law as the citation was issued on the day it bears date, and was immediately returned by the sheriff without making any effort to find any of the heirs of deceased or any person interested in the estate, and because the deceased never made or attempted to publish and declare the will. The Probate Court having refused to entertain the motion, for the reason that the State was not an interested party, original proceedings by mandamus were commenced in the Supreme Court of the State to compel the court to hear and decide the motion. The Supreme Court, however, refused the writ, on the ground that any appropriate proceeding to contest the probate was provided in the statutes, which gave a year in which to make the contest, and that, conceding the interest of the State, it nevertheless could not by a mere motion raise the question of the validity of the probate. But, let us concede, for the sake of the argument only, that under the Washington statutes the requirement of notice was essential to the preliminary probate,

and if by its omission the parties were deprived of or lost their right to deny the existence of the will, or to question its probate, that the absence of the notice might afford substantial ground to contend that rights protected by the Constitution of the United States had been violated. These concessions, however, cannot control this case. As the theory of the bill was, and as undoubtedly it was also the law of Washington, that despite the mere preliminary admission to probate, there was full right to assail the existence of the will and its probate, which was not lost by the failure to give notice, it must follow that such omission did not deprive of the right to a hearing, which right was adequately conferred by the statute, wholly irrespective of whether the notice on the preliminary probate had or had not been given. Indeed, the contention made on this subject amounts to asserting that every state law which provides for a probate in common form is repugnant to the due process clause of the Constitution, even although under the state statutes full and adequate probate remedies are provided by which interested parties may subsequently, within a time fixed by law, be heard in the probate proceedings to question the existence of a will or its probate. When the result of the proposition is thus ascertained it becomes obvious that it is not only opposed to the theory upon which the bill was framed, but is so in conflict with the adjudications of this court, to which we have previously referred, that it is devoid of all foundation in reason to such an extent as to prevent it from affording a basis for the jurisdiction of the Circuit Court.

We think also the claim of the want of due process of law arising from the contention that in the State of Washington a nuncupative will does not pass title to real estate, and therefore a violation of the due process clause of the Fourteenth Amendment would arise if the Probate Court acted upon the contrary assumption, was clearly devoid of all reasonable foundation. It is not denied that under the law of Washington, in cases of intestacy as well as of testacy, both real and personal property is taken into the control of and is administered by the Probate

Court. And as it is obvious on the face of the bill that the aver-ment referred to was wholly subordinate to the determination of the existence of the alleged nuncupative will and the validity of the probate thereof, a question over which the Circuit Court did not have jurisdiction, it results that the bill upon constitutional or other grounds, did not present a case warranting the court in passing upon the construction and effect of the will.

There was no error in the action of the Circuit Court of Appeals, *and its judgment is, therefore,*

*Affirmed.*