ADAMS and others *v.* TERRELL.

*(Circuit Court, W. D. Texas.* November 20, 1880.)

1. BANKRUPTCY—JURISDICTION.—The proceedings in a bankruptcy court can be collaterally attacked upon questions of jurisdiction.

2. SAME — SAME — DECEASED PARTNER.— A bankruptcy court cannot acquire jurisdiction over the individual estate of a deceased partner by proceedings in bankruptcy.

3. SAME — SAME — SAME.—*Held,* therefore, that a purchaser could not acquire a valid title to the individual real estate of a deceased partner under subsequent proceedings in bankruptcy, although the firm business had been continued by the executors of the decedent in the absence of the surviving partner, and no action had been taken upon the decedent's estate, other than to record his will and file an inventory.

Trespass.

This was an action of trespass to try title, and was submitted to the court upon an agreed statement of facts.

The plaintiffs and the defendant both claimed title to the lands in controversy under one Enoch Jones, deceased; the plaintiffs as his heirs at law, and the defendant as purchaser at a sale made by the order of the district court for the western district of Texas, sitting in bankruptcy.

The following facts appear from the agreed statement:

Enoch Jones, the ancestor of the plaintiffs, who are his only heirs, was in his life-time and at his death seized in fee of the premises in controversy. During his life-time Jones and one Joseph Ulrich had been engaged in commercial business in the city of San Antonio, under the firm name of J. Ulrich & Co. The partnership between them expired by its own limitation in 1861, while Ulrich was in Mexico. In the year 1862 Jones visited Mexico, where he met Ulrich and agreed with him to pay off the debts of the firm, and upon his return to San Antonio published in two newspapers a notice of the dissolution of the firm, and that he assumed its debts. There was no provision in the articles of partnership that the partnership should be continued after the death of either of the partners by the surviving partner and the personal representatives of the deceased partner.

In August, 1863, Jones died, leaving a will, in which I. A. Paschal and Samuel G. Newton were appointed his executors. They qualified and took possession of the estate. The will provided that the executors should not give bond or security, but only take the oath prescribed by law, and that no action should be taken upon the estate in the probate court other than to record the will and file an inventory of the estate. The will further provided that the business of J. Ulrich & Co. should be continued or closed up, as the executors and Ulrich might decide to be for the best interests of the estate and the firm. Ulrich and the executors never had any understanding or agreement to continue the partnership after the death of Jones, nor did Ulrich give any authority to the executors to continue the business of the firm or consent thereto.

On November 2, 1867, the partnership affairs had not been closed up by the executors. On that day a creditor of the firm of J. Ulrich & Co. filed a petition in involuntary bankruptcy against said firm in the district court for the western district of Texas. The grounds upon which the petition prayed an adjudication of bankruptcy were that Ulrich, being absent within six calendar months next before the date of the petition, had, with intent to defraud his creditors, remained ab-

sent from the state of Texas, and that the executors of the estate of Jones had fraudulently suspended and had not resumed payment of the commercial paper of the said firm of J. Ulrich & Co., nor of their estate, for the period of fourteen days.

The executors of Jones, by their attorneys, accepted service of the petition. No notice of said petition was given, nor service of process thereon was ever made on Ulrich, the surviving partner of said firm.

On November 4, 1867, the firm of J. Ulrich & Co. were formally adjudicated bankrupt by the register in bankruptcy, and Frederick Carlton, Esq., was thereupon. duly appointed assignee. On the petition of certain creditors of said firm, who had obtained judgments in the United States circuit court against the executors of Jones prior to the said adjudication, the bankrupt court directed Carlton, the assignee, to sell certain lands in the said petition described, being the individual property of the estate of Jones, among which was the property in controversy in this suit. By virtue of this order the said real estate was sold, and the lands now in controversy were purchased by the defendant, who, having complied with the terms of the sale, received on April 10, 1868, a deed therefor from the assignee. The proceeds of the sale were, by order of the bankrupt court, paid to the creditors who had obtained judgments and acquired liens upon the property, the judgments having been propounded in the bankrupt court.

At the time of the institution of the proceedings in bankruptcy, and for several years previous thereto, and at the time of the adjudication, Ulrich was in Mexico. After the distribution of the proceeds of the sale aforesaid, and of the sale of some of Ulrich's individual property, among the creditors of J. Ulrich & Co., Ulrich received his discharge in bankruptcy.

In March, 1867, the executors of Jones were, upon motion of certain of the heirs, required by the probate court of Bexar county to give bond in the sum of $50,000, or be removed; but no bond was given, and no order of removal nor any other order has been thereafter made.

By article 1371, Paschal's Digest of the Laws of Texas, it is provided that "any person capable of making a will may so provide, by his or her will, that no other action shall be had in the county court in relation to the settlement of his or her estate than the probating and sequestration of his or her will, and the return of an inventory of the estate; and in all such cases any person having a claim or debt against said estate may enforce the payment of the same by suit against the executor of said will; and when judgment is recovered the execution shall run against the estate of such testator in the hands of such executor."

The same article provided that such executor might be required by the probate court to give bond, upon the petition of creditors or other persons interested in the estate, on making it appear that the executor was wasting the estate. It was under these provisions of the law that the judgments above mentioned were recovered against the executors by the creditors of J. Ulrich & Co., and that the executors were required, as above mentioned, to give bond.

Upon this statement of facts the plaintiffs, heirs at law of Jones, brought this suit to recover the lands bought by the defendant, Terrell, and held by him. The defendant pleaded the general issue, and the limitation of two years prescribed by section 2 of the bankrupt act (Rev. St. § 5057) against suits between an assignee in bankruptcy and a person claiming an adverse interest touching any property or rights of property transferable to or vested in such assignees.

*A. H. Willie* and *C. L. Wurzbach*, for plaintiffs.

*Jacob Waelder* and *Columbus Upson*, for defendant.

Woods, C. J. Upon the agreed facts the plaintiffs are entitled to a finding and judgment in their favor, unless their title has been divested by the proceedings in the bankruptcy, and the sale and deed made by the assignee in bankruptcy to the defendant. It is insisted by the plaintiffs that the bankruptcy court had jurisdiction neither of the persons of the bankrupts nor of the subject-matter of the bankruptcy. The defendant claims that the bankrupt court having exclusive jurisdiction of the subject of bankruptcies, and having neces-

sarily decided that it had jurisdiction in this case, and having exercised its jurisdiction, its proceedings cannot be collaterally attacked, and must remain binding until reversed in a direct proceeding. He claims further that as long as debts of the firm of J. Ulrich & Co. remained unpaid the partnership existed, at least for the purpose of the collection of its accounts and the payment of its debts; that under the terms of the will of Jones, and the peculiar law of Texas cited in the statement of facts, the executors were, in fact, trustees, and that judgments could be recovered against them and the property of the estate taken in execution, and that a partnership so situated might be put in bankruptcy, notwithstanding the death of one of the partners. He claims further that the acceptance by Ulrich of his discharge was an acceptance of service, or, at least, a waiver; the executors of Jones having accepted service, jurisdiction of the court over the persons of the firm was complete.

The first question to be answered is, can the proceedings of the bankrupt court be attacked in this collateral proceeding?

The rule has long been settled that the jurisdiction of any court may be challenged in any other court where its judgments or decrees are relied on. *Elliott* v. *Peirsol,* 1 Pet. 328; *U. S.* v. *Arredondo,* 6 Pet. 691; *Vorhees* v. *Bank of U. S.* 10 Pet. 475; *Wilcox* v. *Jackson,* 13 Pet. 511; *Williamson* v. *Berry,* 8 Pet. 540. In the case last cited the court says: "The jurisdiction of any court exercising authority over a subject may be inquired into in any other courts where the proceedings in the former are relied on and brought before the latter by a party claiming the benefit of such proceedings." It has in later cases even been held that the record of a judgment may be contradicted as to the facts necessary to give the court jurisdiction, and if it be shown that such facts did not exist the record will be a nullity, notwithstanding it may recite that those facts did exist. *Thompson* v. *Whitman,* 18 Wall. 457; *Knowles* v. *Gas-light & Coke Co.* 19 Wall. 58. These authorities, if authorities were needed, fully dispose of the question under consideration; and it is a most reasonable conclusion. No court can acquire jurisdiction and shut out

inquiry by asserting or assuming that it possesses it. The validity of the proceedings of the bankrupt court, under which defendant claims, are therefore open to attack in this case.

We are next to inquire whether the individual property of the estate of Jones could be drawn into and administered in the bankrupt court by a proceeding against the firm, of which, when alive, he had been a member. Whatever power the bankrupt court possesses over the subject of bankruptcies it derives exclusively from the bankrupt act. Power not conferred by that act it does not possess. We look in vain through its sections to find any authority conferred to put the estate of a deceased person into bankruptcy. The twofold purpose which the bankrupt act has in view, viz., the equal and just distribution of the bankrupt's estate among his creditors, and the discharge of the bankrupt from his debts, does not require the application of the law to the estate of the deceased person. The laws of the states provide for an equitable and just distribution of the decedent's estate, and death has already discharged him of all personal liability. The bankrupt law could, in the case of a deceased person, accomplish nothing not already accomplished without it.

While there is no direct authority given by the bankrupt act over the estates of deceased persons, the implication from what is expressed is strongly against such a jurisdiction. Section 12 of the act (Rev. St. 5090) declares, if the debtor dies after the issuing of the warrant, the proceedings may be continued and concluded in like manner as if he had lived; that is, the estate of a deceased may be administered after his death if the court has acquired jurisdiction over it in his lifetime.

This excludes the idea that such jurisdiction is conferred unless it is acquired during the life-time of the bankrupt. It has, therefore, been held that if the debtor, in a case of involuntary bankruptcy, dies after the issuing of the order to show cause and before the trial, the proceedings abate, they being analogous to actions at law for torts which abate on the death of the party. McDonald, 8 B. R. 237.

v.4,no.9—51

There being then no warrant in the bankrupt act to justify an adjudication in bankruptcy against the individual estate of a deceased person, can such proceedings be sustained against his estate by means of a proceeding against the late firm, of which the deceased was a member?

The same lack of authority meets us here. There is absolutely no expression in the bankrupt act which warrants the assumption that the bankrupt court can take jurisdiction over the individual estate of a deceased partner. The law does not in terms confer jurisdiction over the assets of a partnership, one of whose members is dead. Hence it has been held that if a firm is dissolved by the death of one of the partners, the executors of the deceased partner cannot be brought into bankruptcy. *In re Stevens,* 1 Saw. 397, 5 B. R. 112.

And if the administrator of the deceased partner has given the necessary bond and taken charge of the partnership property the district court may, in its discretion, even refuse to adjudge the partnership bankrupt. *In re Daggett,* 3 Dill. 83, and 8 B. R. 433.

I conclude, therefore, that over the individual estate of Jones the bankrupt court acquired no jurisdiction by this proceeding in bankruptcy. Nor is this decision to be overturned by the fact that the executors of Jones were not required, under the terms of the will, and by the laws of Texas, to account to the probate court. If they had been purely trustees, deriving no authority whatever from the probate court, the estate committed to them could not be drawn into bankruptcy. The bankrupt law makes no provision for the bankruptcy of trust estates, except by proceedings against the *cestui que trust.* The only reference to trust property is the provision that "no property held by the bankrupt in trust shall pass by the assignment."

An indispensable requisite to an adjudication in bankruptcy is the existence of a person who owns, in his own right, either severally or jointly with another, property which it is the purpose of the adjudicant to bring into the bankrupt court. In the case of the private property of a deceased partner there is no person *in esse* against whom the proceed-

ings will lie. But the plaintiffs insist not only on the want of jurisdiction of the bankrupt court over the subject-matter, but also its want of jurisdiction over the person. It is clear, if what has already been said is true, that the bankrupt court acquired no jurisdiction by a service of its process upon the executor.

The only method by which the property of a partnership dissolved by death can be drawn into the bankrupt court is by service on the surviving partner, in whom is the title to all the partnership property. Ulrich was the surviving partner of the firm of J. Ulrich & Co. No service of any kind was ever attempted to be made on him. But it is said he accepted a discharge from the bankrupt court. This, however, does not cure the want of service, at least so far as it concerns the individual property of Jones, even if it is effectual as to the partnership property. It is, to put it in the best light for the jurisdiction, the entry of an appearance after judgment without process and without service of any kind. The acceptance of the discharge may estop Ulrich; it can have no other effect. My view is, therefore, that the bankrupt court, by the proceedings in bankruptcy against J. Ulrich & Co., acquired no jurisdiction over the individual property of Jones, a deceased member of the firm, and that the title of defendant in this action derived through said proceedings is null and void.

With the bankrupt proceedings must fall the plea of the two years' limitation prescribed by the second section of the bankrupt act against suits between an assignee in bankruptcy and any person claiming an adverse interest touching any property or rights of property transferable to or vested in the assignee. If the bankrupt proceedings are void for want of jurisdiction there was no adjudication of bankruptcy, no bankrupt, no assignee, and no property transferable to or vested in him. In short, all the attempted proceedings in bankruptcy are as if they never had existed. There is, therefore, no basis for the limitation to rest on.

There must be a finding and judgment for the plaintiffs.