In re Klaus Hubert GOERG, Debtor.

Klaus Hubert GOERG,
Plaintiff-Appellant,

v.

Edgardo L. PARUNGAO,
Defendant-Appellee.

No. 87–8161.

United States Court of Appeals,
Eleventh Circuit.

May 18, 1988.

Thomas C. Shelton, Kilpatrick & Cody, Robert A. Goldstein, Dennis S. Meir, Allison Wade, Atlanta, Ga., for plaintiff-appellant.

Robert E. Hicks, Hicks, Maloof & Campbell, Atlanta, Ga., for defendant-appellee.

Before RONEY, Chief Judge, TJOFLAT, Circuit Judge, and CLEMON,* District Judge.

---

* Honorable U.W. Clemon, U.S. District Judge for the Northern District of Alabama, sitting by designation.

TJOFLAT, Circuit Judge:

█ This appeal presents a question of first impression for this court: whether section 304 of the Bankruptcy Code, 11 U.S.C. §§ 101–1330, opens United States bankruptcy courts to proceedings ancillary to foreign insolvency proceedings where the entity that is the subject of the foreign proceeding qualifies for insolvency administration under foreign law, but does not fall within the Bankruptcy Code's definition of "debtor." Both the bankruptcy court and the district court in this case answered the question in the negative, holding that a West German bankruptcy trustee was precluded from commencing a section 304 ancillary case because the debtor in the foreign case—an insolvent decedent's estate— did not qualify as a "debtor" under the Bankruptcy Code. We conclude that the courts below misconstrued the eligibility requirements for section 304 relief, and we accordingly reverse.

## I.

Heinz Guenter Kaussen, a resident and citizen of the Federal Republic of Germany (West Germany), died in April 1985 owning substantial property in both Europe and North America. Although most of his holdings were located in West Germany, he also owned property in Canada, Ireland, California, and Georgia. At the time of his death, his liabilities exceeded the value of his assets by some $55 million. His business enterprises had been headquartered in Cologne, West Germany, and the vast majority of the estate's creditors are located in West Germany.

Shortly after Kaussen's death, probate proceedings were commenced in the local court of Cologne. That court appointed an administrator who, after determining that the estate was insolvent, petitioned the court to commence bankruptcy proceedings.[1] On January 24, 1986, the court entered an Order of Adjudication, finding that the estate was insolvent. The court appointed Klaus Hubert Goerg, appellant here, to serve as the bankruptcy trustee and authorized him to take possession of the decedent's property both in Germany and abroad. The adjudication of bankruptcy and the appointment of Goerg as trustee were affirmed by the Cologne Regional Court and the Cologne Higher Court of Appeals. The Higher Court of Appeals specifically held that "[i]n addition to the domestic property, the Debtor's bankrupt estate shall further include the Debtor's property located abroad. The latter, too, shall be placed in custody and used by the Trustee."[2]

Meanwhile, upon Kaussen's death, the Probate Court of Fulton County, Georgia had appointed Edgardo L. Parungao, appellee here, to serve as administrator of the Kaussen estate assets located in Georgia.[3] In June 1986, Goerg filed a petition pursuant to 11 U.S.C. § 304 (1982) in the United States Bankruptcy Court for the Northern District of Georgia, seeking to enjoin Parungao from prosecuting the Fulton County probate proceeding.[4] Under section 304, a United States bankruptcy court may, upon petition by the official representative of a foreign bankrupt in a foreign insolvency proceeding, enter an order staying the

1. West German law, like the law in many other foreign countries, permits bankruptcy proceedings to be brought with respect to insolvent decedents' estates. *See* Klocker, *Foreign Debtors and Creditors Under United States and West German Bankruptcy Laws: An Analysis and Comparison,* 20 Texas Int'l L.J. 55, 90 & n. 223 (1985); Nadelmann, *Insolvent Decedents' Estates,* 49 Mich.L.Rev. 1129, 1129 (1951).

2. Appellant represents, and appellee does not dispute, that the Cologne Higher Regional Court of Appeals is the highest court of review with respect to matters involving insolvent decedents' estates.

3. Under Georgia law, the probate court of the county in which a nonresident decedent's real property is located has jurisdiction over the administration of that property. *See Hungerford v. Spalding,* 183 Ga. 547, 189 S.E. 2, 3 (1936).

4. The bankruptcy court reported that "[u]nder a settlement approved by Superior Court of Fulton County, Georgia and the Probate Court of Fulton County, Georgia, distributions from the estate are to be paid 20% to each of Kaussen's four children and Mrs. Ingelborg Skowronek, mother of the children and Kaussen's lifetime companion."

commencement or continuation of any action in the United States against property involved in the foreign proceeding. *Id.* § 304(b)(1)(A). The bankruptcy court may also stay the enforcement of any lien or judgment obtained against such property, *id.* § 304(b)(1)(B), and may order that such property be turned over for administration by the foreign court in which the principal bankruptcy case is pending. *Id.* § 304(b)(2). Finally, the bankruptcy court may order other relief deemed "appropriate." *Id.* § 304(b)(3). In his section 304 petition, Goerg requested the bankruptcy court to order that the Georgia property be turned over to him for distribution in the West German bankruptcy proceeding.

Based on its interpretation of the language of section 304 and the pertinent definitional sections, the bankruptcy court held that its jurisdiction to entertain section 304 petitions was limited to cases in which the subject of the foreign insolvency proceeding qualified as a "debtor" as that term is defined in the Bankruptcy Code. The bankruptcy court then concluded that an insolvent decedent's estate—the debtor in the foreign insolvency proceeding in this case—did not qualify as a "debtor" under the Code. Accordingly, the bankruptcy court dismissed Goerg's section 304 petition for lack of subject matter jurisdiction.[5] *In re Goerg,* 64 B.R. 321 (Bankr.N.D.Ga. 1986). The district court affirmed, and Goerg now appeals.

## II.

Section 304 provides as follows:

(a) A case ancillary to a foreign proceeding is commenced by the filing with the bankruptcy court of a petition under this section by a foreign representative.

(b) Subject to the provisions of subsection (c) of this section, if a party in interest does not timely controvert the petition, or after trial, the court may—

(1) enjoin the commencement or continuation of—

(A) any action against—

(i) a debtor with respect to property involved in such foreign proceeding; or

(ii) such property; or

(B) the enforcement of any judgment against the debtor with respect to such property, or any act or the commencement or continuation of any judicial proceeding to create or enforce a lien against the property of such estate;

(2) order turnover of the property of such estate, or the proceeds of such property, to such foreign representative; or

(3) order other appropriate relief.

(c) In determining whether to grant relief under subsection (b) of this section, the court shall be guided by what will best assure an economical and expeditious administration of such estate, consistent with—

(1) just treatment of all holders of claims against or interests in such estate;

(2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;

(3) prevention of preferential or fraudulent dispositions of property of such estate;

(4) distribution of proceeds of such estate substantially in accordance with the order prescribed by this title;

(5) comity; and

(6) if appropriate, the provision of an opportunity for a fresh start for the

---

5. Although it felt compelled by the statutory language to dismiss the petition, the bankruptcy court expressed dismay at the outcome:

Here we have German nationals [i.e., Mrs. Skowronek and Kaussen's four children, *see supra* note 4] who have lost their appeals to assert their interests in Kaussen's estate in the Courts of the Federal Republic of Germany, turning to the probate laws of the State of Georgia. In Georgia, they will receive what

they could not from their own home courts.... As the facts now appear before the Court, this is mainly a contest between the German bankruptcy trustee and Kaussen's heirs. The heirs have lost in their own home courts and are now pursuing their claims in a more favorable forum, to wit: the Probate Court of Fulton County, Georgia. It does seem to be a great affront to the principles of comity to allow this to occur.

individual that such foreign proceeding concerns.

11 U.S.C. § 304 (1982).

In holding that it lacked jurisdiction to entertain Goerg's section 304 petition, the bankruptcy court engaged in the following analysis. First, it looked to the Code's definition of "foreign proceeding":

> "[F]oreign proceeding" means proceeding, whether judicial or administrative and whether or not under bankruptcy law, in a foreign country in which the debtor's domicile, residence, principal place of business, or principal assets were located at the commencement of such proceeding, for the purpose of liquidating an estate, adjusting debts by composition, extension, or discharge, or effecting a reorganization.

*Id.* § 101(22) (Supp. IV 1986). Because the definition of "foreign proceeding" makes reference to "the *debtor's* domicile, residence, principal place of business, or principal assets," the bankruptcy court concluded that its jurisdiction to entertain section 304 petitions was limited to cases in which the subject of the foreign proceeding qualified as a "debtor" under the Code.[6] The Code defines a "debtor" as a "person or municipality concerning which a case under this title has been commenced." *Id.* § 101(12) (1982). "Person," under the Code, "includes individual, partnership, and corporation, but does not include governmental unit." *Id.* § 101(35) (Supp. IV 1986). The bankruptcy court held that an insolvent decedent's estate is not a "person," and therefore not a "debtor," and that the court was consequently without jurisdiction to entertain Goerg's petition.

In evaluating the correctness of the bankruptcy court's ruling, our first task is to determine whether, as a general matter, the Code's definition of "debtor" excludes insolvent decedents' estates. If we conclude that it does, our task will then be to decide whether that exclusion applies in the context of a section 304 ancillary proceeding.

 Before we begin our analysis, we note that Congress has the *power* to create bankruptcy jurisdiction over the administration of decedents' estates. U.S. Const. art. I, § 8, cl. 4.[7] Care should be taken not to confuse the question of the breadth of Congress' bankruptcy power with the so-called "probate exception" to statutory diversity jurisdiction. That exception relates only to 28 U.S.C. § 1332 (1982),[8] and has no bearing on federal question jurisdiction, the jurisdiction invoked in bankruptcy cases. *Cf. Covell v. Heyman,* 111 U.S. 176, 179–80, 4 S.Ct. 355, 357, 28 L.Ed. 390 (1884) (property in custody of state court may be disturbed by federal court "exercis[ing] jurisdiction for the purpose of enforcing the supremacy of the Constitution and laws of the United States"). Owing to the supremacy clause, federal bankruptcy law preempts state law; as one of Congress' enumerated powers, the power to enact bankruptcy laws is limited only by the substantive guarantees contained in the Constitution. *Cf. Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 589, 601–02, 55 S.Ct. 854, 863, 869, 79 L.Ed. 1593 (1935). Whether Congress has actually exercised its bankruptcy power in a particular area is, of course, a matter of statutory construction.

Having said that, we turn to the question whether the Code's definition of "debtor" excludes decedents' estates. As the bankruptcy court correctly observed, the term "debtor" as defined by the Code means "person or municipality," and the term

---

**6.** As support for its holding, the bankruptcy court cited *Angulo v. Kedzep Ltd.,* 29 B.R. 417 (S.D.Tex.1983). In the course of discussing whether the foreign representative in that case had met the threshold prerequisites for application of section 304, the *Angulo* court stated that the foreign debtor "could be a debtor under Chapter 11." *Id.* at 418.

**7.** Clause 4 provides that Congress shall have power "[t]o establish ... uniform Laws on the subject of Bankruptcies throughout the United States."

**8.** The "probate exception" was developed at a time when the diversity statute granted jurisdiction over "suits of a civil nature in law or equity." Probate matters were deemed not to fit this description because such actions would have been heard in the ecclesiastical courts. *See* C. Wright, Law of Federal Courts § 25, at 143–46 (4th ed. 1983).

"person" "includes individual, partnership and corporation, but does not include governmental unit." Notably, the Code does not *exclude* decedents' estates from the definition of "person"; Congress' use of the word "includes" in the definition of "person" means that the definition is not limiting. *See* 11 U.S.C. § 102(3) (1982) (rules of construction).

Nevertheless, we find two indicia that Congress intended to exclude insolvent decedents' estates from the definition of "person." First, Congress defined "entity" to include "person, estate, trust, governmental unit, and United States trustee." *Id.* § 101(14) (Supp. IV 1986). If Congress had intended "person" to include "estate," there would have been no reason to list "estate" separately in the definition of "entity." Second, the legislative history expressly states that "[t]he definition [of person] does not include an estate or a trust." H.R.Rep. No. 595, 95th Cong., 2d Sess. 313, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6270; S.Rep. No. 989, 95th Cong., 2d Sess. 25, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5811.

■ Based on these indicia, we conclude that the Code's definition of "person," and therefore its definition of "debtor," excludes insolvent decedents' estates. Other courts that have addressed this question have uniformly embraced this view. *See In re Estate of Whiteside*, 64 B.R. 99, 102 (Bankr.E.D.Cal.1986); *In re Estate of Patterson*, 64 B.R. 807, 808 (Bankr.W.D.Tex. 1986); *In re Jarrett*, 19 B.R. 413, 414 (Bankr.M.D.N.C.1982); *In re 299 Jack-Hemp Assocs.*, 20 B.R. 412, 413 (Bankr.S.D. N.Y.1982); *In re Estate of Brown*, 16 B.R. 128, 128 (Bankr.D.D.C.1981).[9] These courts generally have opined that Congress elected not to extend bankruptcy jurisdiction to insolvent decedents' estates because

the individual states have developed, through their probate systems, a comprehensive and specialized machinery for the administration of such estates. *See Jarrett*, 19 B.R. at 414; *299 Jack-Hemp Assocs.*, 20 B.R. at 413. Some of the courts have also noted that the policy of the Bankruptcy Code is to give individuals a "fresh start" through discharge of their debts, and that this policy is not furthered by bankruptcy administration of decedents' estates. *See Jarrett*, 19 B.R. at 414; *cf. In re Estate of Hiller*, 240 F.Supp. 504, 504 (N.D.Cal.1965) (interpreting 1898 Bankruptcy Act); *Adams v. Terrell*, 4 F. 796, 801 (W.D.Tex.1880) (in the case of an insolvent decedent's estate, "death has already discharged [the decedent] of all personal liability").

As we indicated above, however, our conclusion that the Code's definition of "debtor" excludes decedents' estates does not end our inquiry: we must now determine whether that exclusion applies in the context of a proceeding ancillary to a foreign proceeding pursuant to section 304. As the bankruptcy court emphasized, the Code's definition of "foreign proceeding" does make reference to "the debtor."[10] However, that same definition states that " 'foreign proceeding' means proceeding ... *whether or not under bankruptcy law* ... for the purpose of *liquidating an estate*, adjusting debts by composition, extension, or discharge, or effecting a reorganization." 11 U.S.C. § 101(22) (Supp. IV 1986) (emphasis added). Thus, we are presented with an anomaly: although the inclusion of the term "debtor" in the definition of "foreign proceeding" suggests that the subject of the foreign proceeding must qualify as a "debtor" under United States bankruptcy law, the Code expressly provides that the foreign proceeding need not even be a

---

9. Courts addressing the issue under the predecessor of the current Bankruptcy Code, the 1898 Bankruptcy Act, reached the same conclusion. *See In re Estate of Hiller*, 240 F.Supp. 504, 504 (N.D.Cal.1965); *In re Morgan*, 26 F.2d 90, 91 (D.Mass.1928); *In re Fackelman*, 248 F. 565, 568 (S.D.Cal.1918); *see also Adams v. Terrell*, 4 F. 796, 801 (W.D.Tex.1880) (interpreting predecessor of 1898 Act). During the process leading to the enactment of the present Bankruptcy Code,

the Commission on the Bankruptcy Laws recommended that the traditional exclusion of decedents' estates be continued. *See* H.R. Doc. No. 137, 93d Cong., 1st Sess., pt. I, at 185 (1973).

10. We note that the text of section 304 itself also contains the term "debtor."

bankruptcy proceeding, either under foreign or United States law. Moreover, "foreign proceeding" includes a proceeding "for the purpose of liquidating an estate" [11]—yet, as we have seen, a decedent's estate does not qualify as a "debtor" under United States bankruptcy law.

The anomaly created by the inclusion of the term "debtor" in the otherwise expansive definition of "foreign proceeding" could be resolved in either one of two ways. First, we could adopt the position taken by the bankruptcy court: that the Code's narrow definition of "debtor" controls, notwithstanding the otherwise expansive definition of "foreign proceeding." Alternatively, we could adopt the view that the term "debtor" as used in the section 304 context incorporates the definition of "debtor" used by the forum in which the foreign proceeding is pending. Under this alternative view, the bankruptcy court has jurisdiction to entertain the section 304 petition provided that the debtor qualifies for relief under applicable foreign law, and provided further that the foreign proceeding to which the debtor is subject is "for the purpose of liquidating an estate, adjusting debts by composition, extension, or discharge, or effecting a reorganization."

At first blush, the former view seems the more attractive of the two; the term "debtor" is expressly defined by the Code, and general principles of statutory construction require us to assume that Congress intended that the definition apply each time the term appears. However, it is also a well established canon of statutory construction that "[a] statute susceptible of more than one meaning must be read in the manner which effectuates rather than frustrates the major purpose of the legislative draftsmen." *Schultz v. Louisiana Trailer Sales, Inc.*, 428 F.2d 61, 65 (5th Cir.1970). Because we find that the question of debtor eligibility for section 304 ancillary assistance is susceptible of two interpretations, we turn to an examination of the purposes behind section 304.

Section 304, which was enacted as part of the Bankruptcy Reform Act of 1978 and which had no predecessor in prior law,[12] "was intended to deal with the complex and increasingly important problems involving the legal effect the United States courts will give to foreign bankruptcy proceedings." *Cunard Steamship Co. Ltd. v. Salen Reefer Servs. AB*, 773 F.2d 452, 454 (2d Cir.1985); *see generally* Unger, *United States Recognition of Foreign Bankruptcies*, 19 Int'l Law. 1153 (1985). The filing of a section 304 petition does not commence a full bankruptcy case; a section 304 case is an ancillary case in which a United States bankruptcy court is authorized to apply its processes to give effect to orders entered in a foreign insolvency proceeding. Consistent with "[p]rinciples of internation-

---

**11.** The term "estate" is not defined in the definitional section of the Bankruptcy Code. The Code does use the term of art "property of the estate" to describe "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (1982). However, the Code also uses the term "estate" in a sense that includes decedent's estates. *See id.* § 101(14) (Supp. IV 1986) (definition of "entity"). The use of the term "estate" in the definition of "foreign proceeding" is ambiguous, and could be interpreted as including insolvent decedents' estates, not just "estates" in the sense of the bankruptcy term of art "property of the estate." *See* 2 Collier on Bankruptcy ¶ 304.01, at 304–12 (15th ed. 1987) ("That a foreign administration of a decedent's estate is ... a 'foreign proceeding' is suggested by the expansive language of [section 101(22)] which includes within its scope proceedings under laws other than bankruptcy laws brought for the purpose of liquidating an estate.").

**12.** *See* H.R. Doc. No. 137, 93d Cong., 1st Sess., pt. II, 69–71 (1973); *Bankruptcy Act Revision: Hearings on H.R. 31 and H.R. 32 Before the Subcomm. on Civil and Constitutional Rights of the House Comm. on the Judiciary*, 94th Cong., 2d Sess. 1443 (1976) (statement of Professor Kurt H. Nadelmann). Under section 2a(22) of the 1898 Bankruptcy Act, bankruptcy courts were authorized to "[e]xercise, withhold, or suspend the exercise of jurisdiction ... where a bankrupt has been adjudged bankrupt by a court of competent jurisdiction without the United States." Although the 1898 Act did not provide a mechanism whereby a foreign bankruptcy trustee could initiate a proceeding in a United States bankruptcy court, some United States courts did defer to foreign insolvency administrations as a matter of comity. *See, e.g., Cornfeld v. Investors Overseas Servs., Ltd.*, 471 F.Supp. 1255, 1259 (S.D.N.Y.), *aff'd,* 614 F.2d 1286 (2d Cir.1979).

**1568**

al comity and respect for the judgments and laws of other nations," Congress intended that the bankruptcy courts have "maximum flexibility" in fashioning appropriate orders. H.R.Rep. No. 595, 95th Cong., 2d Sess. 325, *reprinted in* 1978 U.S. Code Cong. & Admin.News 5963, 6281. The ultimate purpose of the section 304 mechanism is to "prevent dismemberment by local creditors" of assets located in this country that are involved in a foreign insolvency proceeding. *Id.* at 324; S.Rep. No. 989, 95th Cong., 2d Sess. 35, *reprinted in* 1978 U.S.Code & Admin.News 5787, 5821.

It is thus clear that Congress enacted section 304 to help further the efficiency of foreign insolvency proceedings involving worldwide assets. In aid of such proceedings, federal bankruptcy courts may, within the constraints imposed by section 304, apply their processes and expertise to marshal property of the foreign debtor's estate located in this country. Because the focus is on making United States processes available in aid of foreign proceedings, not actual bankruptcy administration, it would make little sense to require that the subject of the foreign proceeding qualify as a "debtor" under United States bankruptcy law. *See* Boshkoff, *United States Judicial Assistance in Cross-Border Insolvencies,* 36 Int'l & Comp. L.Q. 729, 740–41 (1987); Klocker, *Foreign Debtors and Creditors Under United States and West German Bankruptcy Laws: An Analysis and Comparison,* 20 Texas Int'l L.J. 55, 90 (1985). Indeed, in light of the comity concerns that induced Congress to enact section 304, it would make eminent sense for Congress to define expansively the class of foreign insolvency proceedings for which ancillary assistance is available.

It bears emphasizing that a section 304 debtor does not receive the benefits of full bankruptcy administration under United States law. The legislative history expressly states that the filing of a section 304 petition "does not commence a full bankruptcy case." H.R.Rep. No. 595, 95th Cong., 2d Sess. 324, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6281; S.Rep. No. 989, 95th Cong., 2d Sess. 35, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5821. Thus, for example, the debtor is not entitled to the automatic stay under 11 U.S.C. § 362 (1982), nor is the debtor entitled to a discharge of its debts upon completion of the section 304 proceeding. Indeed, the section 304 debtor may ultimately receive no relief at all; it is within the discretion of the bankruptcy court, guided by the factors enumerated in section 304(c), to determine what relief, if any, is appropriate. That the section 304 debtor is denied the two main benefits accorded the debtor in a full bankruptcy proceeding—automatic stay and discharge—strongly suggests that Congress did not intend that "debtor" eligibility under the Code be a prerequisite to section 304 ancillary assistance.[13]

In light of these considerations, we conclude that the debtor in a section 304 proceeding need not qualify as a "debtor" under the Code's definition of that term. Rather, the debtor need only be properly subject, under applicable foreign law, to a proceeding commenced "for the purpose of liquidating an estate, adjusting debts by composition, extension, or discharge, or effecting a reorganization." Because that condition is met in this case, we reverse and remand with instructions that the bankruptcy court entertain Goerg's section 304 petition.[14]

**REVERSED and REMANDED.**

---

**13.** This analysis suggests that a full bankruptcy proceeding involving a foreign debtor may be commenced only if the foreign debtor qualifies as a "debtor" under the Code. *Cf.* 11 U.S.C. § 303(b)(4) (1982).

**14.** The record is not clear as to whether the bankruptcy court has passed on all issues relevant to its jurisdiction to entertain Goerg's sec-

tion 304 petition. In addition to establishing debtor eligibility, the section 304 petition must establish (1) a foreign proceeding against the debtor, (2) a foreign representative entitled to file the petition, and (3) presence within the district of property involved in the foreign proceeding. *See In re Stuppel,* 17 B.R. 413 (S.D.Fla. 1981). On remand, the bankruptcy court

should dismiss the petition unless it finds that each of these elements has been established.