In re Vicki Lynn MARSHALL, Debtor.

E. Pierce Marshall, Plaintiff,

v.

Vicki Lynn Marshall, Defendant.

Vicki Lynn Marshall, Counterclaimant,

v.

E. Pierce Marshall, Counterdefendant.

Bankruptcy No. LA 96–12510–SB.
Adversary No. 96–01838–SB.

United States Bankruptcy Court,
C.D. California.

Dec. 29, 2000.

John P. Melko, Verner, Liipfert, Bernhard, McPherson and Hand, Chartered, Houston, TX.

Joseph A. Eisenberg P.C., Jeffer, Mangels, Butler & Marmaro LLP, Los Angeles, CA.

Philip W. Boesch, Jr., Gregory J. Aldisert, Joshua A. Meyer, Kinsella, Boesch, Fujikawa & Towle, LLP, Los Angeles, CA.

Rex S. Heinke, Greines, Martin, Stein & Richard LLP, Beverly Hills, CA.

## ORDER ON MOTION FOR ENTRY OF JUDGMENT

SAMUEL L. BUFFORD, Bankruptcy Judge.

Trial in this adversary proceeding took place in October and November, 1999. It has come time to resolve the remaining issues in this adversary proceeding, and to issue a judgment. This opinion addresses three issues: (1) whether the alleged probate exception to federal jurisdiction applies to this adversary proceeding; (2) whether this is a "core proceeding" within the meaning of 28 U.S.C. § 157(b); and (3) what form the judgment in this adversary proceeding should take.

### A. Jurisdiction

E. Pierce Marshall continues to complain that this court lacks jurisdiction over this adversary proceeding because this claim belongs in the probate case now in trial in Texas. Notably, however, he has never brought a motion on this subject on proper notice pursuant to this court's motion rules. For this reason alone this issue has never been properly brought before this court, and E. Pierce Marshall is entitled to no relief on this subject.

■ In addition, by filing his claim in this bankruptcy case and by filing this adversary proceeding against Vicki Marshall, E. Pierce Marshall voluntarily submitted to the jurisdiction of this bankruptcy court. He cannot now complain of the consequences thereof, especially after the court has ruled on the merits of his dispute with Vicki Marshall.

### 1. Supreme Court Case Law

The extent of the equity jurisdiction of the bankruptcy court in this case is governed by United States Supreme Court precedent. The Supreme Court has stated, "by filing a claim against a bankruptcy estate the creditor triggers the process of allowance and disallowance of claims, thereby subjecting himself to the bankruptcy court's equitable power." *Langenkamp v. Culp*, 498 U.S. 42, 44, 111 S.Ct. 330, 331, 112 L.Ed.2d 343 (1990) (internal quotes omitted).

■ This equity jurisdiction of the bankruptcy court includes both claims *by* the creditor against the estate and claims

*against* the creditor by the estate's representative. In *Langenkamp*, for example, the Supreme Court found that a preference action filed against a creditor who had filed a claim was "a part of the claims-allowance process," and that the filing of the claim waived the right to a jury trial in the preferential transfer adversary proceeding. *Id.* "In other words," the Supreme Court said, "the creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction." *Id.*

By contrast, in an earlier case the Supreme Court found that a fraudulent transfer adversary proceeding did not come within the "process of allowance and disallowance of claims." *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 57–59, 109 S.Ct. 2782, 2799, 106 L.Ed.2d 26 (1989) (holding that defendants had a right to a jury trial). The Supreme Court reached this result, however, only because the defendants had *not* filed claims in the bankruptcy case. *See Langenkamp,* 498 U.S. at 44–45, 111 S.Ct. at 331. Indeed, the purpose of *Langenkamp* was to eliminate any speculation that the right to a jury trial might survive the filing of a claim in the bankruptcy case, and to make clear that the equity jurisdiction of the bankruptcy court extended to all claims between a creditor and the estate, once the creditor files a claim.

Similarly, in *Hong Kong & Shanghai Banking Corp. v. Simon (In re Simon),* 153 F.3d 991 (9th Cir.1998), the Ninth Circuit found that, by filing a claim, the bank "forfeited any right it had to claim that the court lacked the power to enjoin [it] from commencing a post-bankruptcy collection proceeding against the debtor" in Hong Kong. *Id.* at 997.

■ The teaching of *Langenkamp, Granfinanciera* and *Simon* is that the filing of a claim in a bankruptcy case has substantial procedural consequences for the claimant. By filing a claim, a claimant voluntarily submits to the equity jurisdiction of the bankruptcy court for the allowance and disallowance of all claims made *by* the claimant against the bankruptcy estate or made *against* the claimant by the bankruptcy estate's representative.

■ E. Pierce Marshall filed his claim against the bankruptcy estate in this case. He thus voluntarily submitted himself to the bankruptcy court's equity jurisdiction as to all claims by the estate against him, including the claims asserted in this adversary proceeding.

**2. The "Probate Exception" to Federal Jurisdiction**

E. Pierce Marshall also argues that this court has no jurisdiction over debtor's counterclaim because it essentially involves a probate matter pending in a Texas court that is subject to a probate exception to federal jurisdiction.

■ While there is a probate exception to federal jurisdiction, it is applicable principally to diversity jurisdiction under 28 U.S.C. § 1332 (2000). *See, e.g., Georges v. Glick,* 856 F.2d 971 (7th Cir.1988) (holding that probate exception applies only in diversity cases); *Goerg v. Parungao (In re Goerg),* 844 F.2d 1562 (11th Cir.1988) (same).[1] As the court in *Goerg* specifically stated, "[t]hat exception relates only to 28 U.S.C. § 1332 (1982), and has no bearing on federal question jurisdiction, the jurisdiction invoked in bankruptcy cases." *Id.* at 1565 (footnote omitted). The court in *Goerg* further warned: "[c]are should be taken not to confuse the question of the breadth of Congress' bankruptcy power with the so-called "probate exception" to statutory diversity jurisdiction." *Id.* Furthermore, the probate exception to diversity jurisdiction must be narrowly construed. *Georges,* 856 F.2d at 973. The court in *Goerg* declared generally: "[o]wing to the supremacy clause, federal bank-

---

**1.** Notably, E. Pierce Marshall fails to cite either of these cases.

ruptcy law preempts state law; as one of Congress' enumerated powers, the power to enact bankruptcy laws is limited only by the substantive guarantees contained in the Constitution." *Goerg*, 844 F.2d at 1565.

Virtually all of the cases that E. Pierce Marshall cites in support of his argument are diversity cases, and thus are inapplicable in this case. As in the *Goerg* case, this court's jurisdiction over this adversary proceeding rests on the federal question jurisdiction applicable in bankruptcy cases.

*Goerg* and *Georges* may overstate the lack of a probate exception to federal jurisdiction. In *Markham v. Allen*, 326 U.S. 490, 66 S.Ct. 296, 90 L.Ed. 256 (1946)[2], the Supreme Court held that a federal court may property exercise jurisdiction over a case brought against the executor and resident heirs of a decedent's estate that was in the course of probate administration in state court. Federal jurisdiction arose under the Trading With the Enemy Act, where the plaintiff was a federal officer authorized to receive inheritances in place of German heirs during World War II.

The Supreme Court in *Markham* found that the probate limitation on federal jurisdiction only prohibits a federal court from probating a will, administering a decedent's estate, or assuming control of property in the custody of the state court. *See id.* at 494, 66 S.Ct. 296. The Supreme Court found that a federal court may properly adjudicate rights in probate property, so long as its final judgment does not undertake to interfere with the state court's possession of the property. *Id.* The Supreme Court held that the lower court's ruling that the plaintiff was entitled to all of the net probate estate after payment of debts, taxes and expenses of ad-

ministration was a proper exercise of federal jurisdiction. *Id.* at 495, 66 S.Ct. 296.

The *Markham* rationale would permit this court to determine (if appropriate on the merits) that Vicki Marshall is entitled to all (or a portion) of the net assets in the possession of the Texas probate court (except as to any parties over whom this court has not had jurisdiction). However, this court's rulings do not affect the disposition of the Texas probate assets.

E. Pierce Marshall relies particularly on *Beren v. Ropfogel*, 24 F.3d 1226 (10th Cir.1994), which involved a claim for an expectation of inter vivos gifts or testamentary dispositions. This case, which also appears to be a diversity case, provides no assistance to E. Pierce Marshall. The court sustained the dismissal of claim for an expectation of a gift or testamentary devise on the grounds of failure to state a claim for relief, not on jurisdictional grounds. *See id.* at 1229–30.

Furthermore, the "probate exception" issue has never been properly brought before this court. This issue was first raised by Pierce Marshall in a motion *in limine* that was filed on October 18, 1999, and set for hearing on the first day of trial on October 28, 1999. This procedure violated the court's motion rule, Local Rule 9013–1, which requires 21 days notice of a motion (24 days if served by mail). The court finds that this issue was raised at that time principally for the purpose of delaying the trial.

Pierce Marshall waived his right to make this argument by waiting until several rounds of sanctions had been imposed on him before raising it. Ninth Circuit law holds that a party cannot wait until trial, after the case is going badly for that party, to raise a jurisdictional issue. *See*

---

**2.** E. Pierce Marshall also relies on two quite old United States Supreme Court decisions, which the court finds inapposite. In *Sutton v. English*, 246 U.S. 199, 38 S.Ct. 254, 62 L.Ed. 664 (1918), a suit to annul a will, the Supreme Court found no federal question and no diversity of citizenship, and thus no color-

able basis for federal jurisdiction. *Id.* at 200, 208, 38 S.Ct. 254. In *O'Callaghan v. O'Brien*, 199 U.S. 89, 25 S.Ct. 727, 50 L.Ed. 101 (1905), the Supreme Court found that the only asserted ground for federal jurisdiction was frivolous. *Id.* at 100–01, 25 S.Ct. 727.

*Hill v. Blind Industries & Services,* 179 F.3d 754 (9th Cir.1999).

The court finds that the "probate exception" argument was waived because it was not raised in a timely fashion. A renewal of this argument now, a year after trial, at the time for entry of judgment, is likewise not timely.

### 3. Abstention

On January 6, 1997 E. Pierce Marshall filed his motion contending that mandatory or discretionary abstention applied to Vicki Marshall's counterclaim. As to mandatory abstention, E. Pierce Marshall argued that this portion of the dispute should be heard in a court in Louisiana rather than this court, because J. Howard Marshall II's probate case was pending there. In fact, shortly thereafter the Louisiana Supreme Court dismissed the probate action for lack of jurisdiction. Probate proceedings were subsequently filed in Harris County Court in Houston Texas, and remain pending.

■ E. Pierce Marshall's motion for abstention was untimely. It was not even filed until eight months after this adversary proceeding was filed, at which time this adversary proceeding was well under way.

This court's denial of mandatory abstention has been vindicated both by the lack of Louisiana jurisdiction all together, and by the fact that the trial in the Texas probate action did not begin until nearly four years after this court denied E. Pierce Marshall's motion for abstention, and nearly a year after this court's own trial in this adversary proceeding, and still remains pending.

This court ruled on the abstention motion in 1997, and this ruling is now only subject to review on appeal.

### B. Counterclaim as a Core Proceeding

■ On July 8, 1996 E. Pierce Marshall moved for dismissal of the counterclaim on the grounds of lack of jurisdiction. In opposition to the motion to dismiss, Vicki Marshall asserted that the counterclaim fell within this court's core jurisdiction under 28 U.S.C. § 157(b)(2)(C), on the grounds that the counterclaim in the adversary proceeding was in substance a counterclaim against E. Pierce Marshall's claim against the estate.

At the hearing on August 14, 1996 the court found that the counterclaim in the adversary proceeding was in substance also a counterclaim to Pierce Marshall's claim filed in this case, pursuant to which he voluntarily submitted to the jurisdiction of this court. The court found that the only substantial difference between E. Pierce Marshall's claim that he filed in the bankruptcy case and the complaint that he filed in the adversary proceeding was that in the adversary proceeding he sought a determination that the debt asserted in the claim was nondischargeable. The court further found that the counterclaim arose out of the same transactions and occurrences as the claim and the adversary complaint. Because of the close relation between E. Pierce Marshall's claim and his adversary complaint, the court consolidated the proceedings for all purposes, including trial and judgment.

E. Pierce Marshall raised a question at oral argument whether *Piombo Corp. v. Castlerock Properties (In re Castlerock Properties),* 781 F.2d 159 (9th Cir.1986), would require a finding that the counterclaim is not a core proceeding. *Castlerock* is clearly a different case from this. In *Castlerock* the Ninth Circuit found that adversary proceeding at issue was not a core proceeding, because it was filed before the creditor filed its claim in the bankruptcy case. *Id.* at 161–62. Here, to the contrary, the counterclaim was filed in the adversary proceeding voluntarily filed by E. Pierce Marshall in this court, after he had also voluntarily filed his claim in this case. His voluntary submission to the jurisdiction of this court could not be more clear.

Furthermore, the court's August 14, 1996 determination that the counterclaim and the adversary proceeding was also essentially a counterclaim to Pierce Marshall's claim is not now open to further consideration in this court, unless an appellate court should require such further consideration.

Because this is a core proceeding, the court has power to enter judgment. As to related proceedings only, the court prepares findings of fact and conclusions of law and recommend a judgment, which is submitted to the district court for *de novo* review. *See* 28 U.S.C. § 157(c)(1). However, for a core proceeding the bankruptcy court enters its own judgment.

## C. Entry of Judgment

 Vicki Marshall has moved this court for entry of judgment on her counterclaim now, rather than delay until the completion of the probate trial in Texas. E. Pierce Marshall opposes the entry of judgment at the present time. The court finds the arguments of Vicki Marshall well taken, and the arguments of E. Pierce Marshall unpersuasive.

In the Court's order of October 6, 2000 the court determined that entry of judgment should await the resolution of the probate action in Texas, on the grounds that a calculation of Vicki Marshall's damages cannot be made until the probate court determines what inheritance Vicki Marshall is entitled to receive from her deceased husband J. Howard Marshall II. The court determined that Vicki Marshall's damages (excluding punitive damages, subsequently awarded in the amount of $25 million) amounted to $449,754,134, less whatever she recovers in the probate action. Upon further consideration, and evaluation of the arguments of the parties, the court is persuaded that judgment can be awarded at the present time in a form to take account of any recovery by Vicki Marshall in the Texas probate action. Such a recovery is accommodated as follows: any amount that Vicki Marshall re-

covers in the probate action will count as partial (or full) satisfaction of the judgment issued herein.

The court finds a further reason for issuing judgment in this adversary proceeding sooner rather than later. E. Pierce Marshall appears to be planning to take an appeal in this dispute, and has made a motion for leave to file an interlocutory appeal. The sooner this court issues its judgment, the sooner a definitive appellate process can begin.

## D. Injunctive Relief

In addition to a money judgment, the debtor requests injunctive relief as a part of this court's judgment. A claim for such relief is contained in the counterclaim. No preliminary injunctive relief was sought in this adversary proceeding. Thus the issue is limited to the issuance of a permanent injunction as part of this court's judgment.

 Injunctive relief is not normally available as part of a money judgment. Rule 69 of the Federal Rules of Civil Procedure, incorporated by reference in Rule 7069 of the Federal Rules of Bankruptcy Procedure, incorporates by reference the state law for enforcement of judgments. Vicki Marshall has not shown that injunctive relief is also available as part of a judgment.

The United States Supreme Court touched on this issue in *Grupo Mexicano v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 119 S.Ct. 1961, 144 L.Ed.2d 319 (1999), where it found that a federal court may not issue a preliminary injunction to restrain lawful conduct to protect an anticipated judgment of the court. The Supreme Court observed that the equitable action known as a "creditors bill" is traditionally available to permit a judgment creditor to discover the debtor's assets, to reach equitable interest not subject to execution at law, and to set aside fraudulent conveyances. *See id.* at 319, 119 S.Ct. 1961. The Court noted that, as a general rule, a creditors bill could be brought only

by a creditor who had already obtained a judgment establishing the debt. *Id.* The Court further noted that the law of fraudulent conveyances in bankruptcy was developed to prevent the hiding of assets by a defendant while litigation was in process. The Court also noted that state statutes eliminating the need for a judgment before bringing a fraudulent conveyance claim may have altered the common law rule and may permit the tying up of a defendant's assets while litigation is pending. *See id.,* at 324 n. 7, 119 S.Ct. 1961.

This court finds that the debtor has not shown her entitlement to injunctive relief an support of her money judgment. Accordingly, injunctive relief is denied at this point. However, the denial of injunctive relief is without prejudice to bringing in appropriate judgment enforcement procedures.

By separate document the court is issuing a judgment consistent with its rulings herein and in its prior orders.